**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| FBME Bank Ltd., | ) | |
| | ) | |
| FBME Ltd., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JACOB LEW | ) | |
| in his official capacity as Secretary of the | ) | |
| Treasury, | ) | |
| | ) | |
| U.S. DEPARTMENT OF THE | ) | Civil Action No. 1:15-CV-1270 CRC |
| TREASURY, | ) | |
| | ) | |
| JENNIFER SHASKY CALVERY in her | ) | |
| official capacity as Director of the Financial | ) | |
| Crimes Enforcement Network, | ) | |
| | ) | |
| FINANCIAL CRIMES ENFORCEMENT | ) | |
| NETWORK, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR VOLUNTARY REMAND
AND STAY**

The Court has ordered that the July 29, 2015 Final Rule promulgated by the U.S.

Treasury Department's Financial Crimes Enforcement Network ("FinCEN") is "enjoined from

taking effect until the Court enters a final judgment in this case." *See* August 27, 2015 Minute

Order.  FinCEN intends to seek additional comments on and then reconsider the rule, and the

agency has therefore asked the Court to stay further proceedings to permit FinCEN to reconsider

the challenged rule.  *See* Defs.' Mot. for Vol. Remand and Stay, ECF No. 38 ("Defs.' Mot.").  A

stay will avoid unnecessary rulings on the procedural and substantive validity of a rule that may never take effect.  Furthermore, through a stay, the parties and Court can also avoid litigating an administrative record that all parties agree needs to be supplemented.  *See Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993) ("We commonly grant such motions, preferring to allow agencies to cure their own mistakes rather than wasting the courts' and the parties' resources reviewing a record that both sides acknowledge to be incorrect or incomplete.").

Contrary to the representations in the opposition, defendants do not challenge this Court's jurisdiction and are not requesting that this case be dismissed as moot.  Instead, defendants move this Court to remand the record and stay this litigation pending further proceedings before the agency.  The Court has inherent equitable power to do this, and the equities weigh decidedly in favor of restraint.  Remand would allow defendants the opportunity to reconsider the challenged order and "obviate the need for litigation of issues that defendants are already committed to addressing administratively."  Defs.' Mot. at 3.  And because the Court has enjoined the rule at issue, and for other reasons elaborated upon below, the alleged prejudice cited by plaintiffs is illusory.  Defs.' Mot. at 5-6

The remainder of the arguments raised by plaintiffs does not concern the appropriateness of a remand.  Rather, plaintiffs spend a substantial portion of their brief attempting to litigate summary judgment issues on a rule that has never taken effect, and that defendants do not wish to take effect.

Accordingly, defendants respectfully request that the Court stay proceedings pending reconsideration of the challenged rule by FinCEN on remand.

## ARGUMENT

### A.  The Court Has Inherent Authority to Remand and Stay

2

Plaintiffs make two arguments that the Court does not have authority to remand and stay this case.  Neither has merit.

First, plaintiffs argue that the Court is obligated to hear any case over which it has jurisdiction, including this one, citing, *inter alia*, cases refusing to dismiss on mootness grounds. Pls.' Opp. at 6-8 ("this Court remains obliged to exercise its jurisdiction and to decide, up or down, the arguments now before it").  Defendants do not request that the Court decline to issue a final judgment in a case properly before it; rather, defendants request a temporary stay to permit further administrative action.  If there is still a live dispute at the conclusion of the administrative action, judicial review will presumably follow.  Defs.' Mot. at 6 ("the government is simply requesting that the Court temporarily halt the litigation so that FinCEN may address via additional rulemaking the procedural issues identified by the Court and reconsider its decision to impose the fifth special measure").

The D.C. Circuit and other courts have repeatedly held that the Court has the power to grant such a request.  *See Ethyl Corp.*, 989 F.2d at 524 & n.3 ("[T]he Administrator moved this court for a remand of the administrative record to allow the agency to consider [] new evidence and make a new decision.  We commonly grant such motions[.]") (collecting cases); *Anchor Line Ltd. v. Fed. Mar. Comm'n*, 299 F.2d 124, 125 (D.C. Cir. 1962) ("when an agency seeks to reconsider its action, it should move the court to remand or to hold the case in abeyance pending reconsideration by the agency"); *Citizens Against Pellissippi Parkway Extension, Inc. v. Mineta*, 375 F.3d 412, 417 (6th Cir. 2004) ("voluntary remand is appropriate even without a change in the law or new evidence"); *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001) (where an "agency [] request[s] a remand (without confessing error) in order to reconsider its previous position . . . the reviewing court has discretion over whether to remand"); *Boise*

*Cascade Corp. v. EPA*, 942 F.2d 1427, 1431 (9th Cir. 1991) ("this court granted EPA's motion

for a voluntary remand . . . to consider whether there had been adequate opportunity for public

comment"); *Carpenters Indus. Council v. Salazar*, 734 F. Supp. 2d 126, 132 (D.D.C. 2010)

("courts retain the discretion to remand an agency decision when an agency has raised

'substantial and legitimate' concerns in support of remand"); *Am. Forest Resource Council v.*

*Ashe*, 946 F. Supp. 2d 1, 42-44 (D.D.C. 2013) (granting voluntary remand), judgment entered,

301 F.R.D. 14 (D.D.C. 2014), aff'd, 601 F. App'x 1 (D.C. Cir. 2015).

Second, plaintiffs argue that remand is inappropriate because the Court has already

granted a preliminary injunction, arguing that granting a remand after such a development would

create a "novel and dangerous" new precedent. Pls.' Opp. at 9. But no "novel and dangerous"

precedent would result from the Court's exercise of its routine discretion to stay pending

litigation.

Neither the agency's inherent power to reconsider its decision, *Albertson v. FCC*, 182

F.2d 397, 399 (D.C. Cir. 1950), nor the Court's inherent power to stay proceedings pending such

reconsideration, *Bledsoe v. Crowley*, 849 F.2d 639, 645 (D.C. Cir. 1988), expire when the case

progresses past a certain point, whether that be the entry of emergency relief or anything else.

So it is that the D.C. Circuit has granted voluntary remand even after an adverse panel decision

in a case that it had decided to hear *en banc*. *See Lamprecht v. FCC*, 958 F.2d 382, 385 (D.C.

Cir. 1992) (describing procedural history).

Contrary to plaintiffs' contentions, numerous courts have granted voluntary remand

subsequent to the entry of a preliminary injunction. *See, e.g.*, *Mineta*, 375 F.3d at 414 (holding

that district court abused its discretion by refusing to grant voluntary remand sought after entry

of preliminary injunction); *Sierra Club v. Kempthorne*, No. 07-0216, 2009 WL 323072 at *1

(S.D. Ala. Feb. 9, 2009) ("In the wake of the Court's order granting the plaintiffs' motion for preliminary injunction . . . the defendants filed motions for voluntary remand. . . . The Court granted the motions for remand[.]"); Order, *Select Milk Producer v. Veneman*, No. 01-00060 (D.D.C. March 13, 2001), ECF No. 16 (staying case for further proceedings before agency after entry of preliminary injunction). As one such decision explained, if voluntary remand were unavailable after entry of a preliminary injunction, "judicial review [would be] turned into a game in which an agency is 'punished' for procedural omissions by being forced to defend them well after the agency has decided to reconsider." *Mineta*, 375 F.3d at 416. Indeed, plaintiffs take a very game-oriented view to this litigation in their opposition, suggesting they understand the government's motion as simply a move in that game. *See* Pls.' Opp. at 1 (suggesting that FinCEN "has dealt itself yet another magic card from what seems to be a stacked deck"); *id.* at 2 ("what FinCEN seeks is *not* judicial economy but tactical advantage"); *id.* at 8 n.4 (government's motion "smacks of mere tactics and gamesmanship"); *id.* at 9 (government's motion "threatens to skew [the] playing field"); *id.* at 27 (Court should decide case "here and now, fair and square, up or down"); *id.* ("FinCEN should not be permitted to play Chutes and Ladders"). The government, however, does not share their view.[1] Rather, on review of the Court's decision, FinCEN has determined that it is reasonable to accommodate the Court's concerns and to revisit

---

[1]Defendants note that having secured a preliminary injunction at least partly on the basis of their representations that all they sought was *a chance* to respond to the evidence they had not been previously provided, *see e.g.*, Aug. 25, 2015 Hearing Tr. at 15:25-16:5 (Statement of Mr. Shaffer) ("Your Honor, we wanted a chance to add to that list, to say to FinCEN you're wrong in some of your premises and we can demonstrate that conclusively. When we have a hard target, something that's firm, we know what we're talking about. We can hit that. These are targets that we could have hit, Your Honor."), plaintiffs are now rejecting the opportunity the government is offering to do just that, instead asking the Court to proceed to review the agency's action on the merits without any of the additional administrative process they formerly claimed was so crucial to them.

its decision in light of the procedural errors that the Court preliminarily ruled may have merit.

FinCEN is practicing good governance, not gamesmanship.[2]

Accordingly, ample case law contradicts plaintiffs' repeated suggestion that voluntary remand in similar circumstances is unprecedented.  *See* Pls.' Opp. at 2 ("we have found no case[] in which a court has gone as far as this Court has towards rendering a final judgment, specifically by issuing a preliminary injunction, only then to order a remand"); Pls.' Opp. at 9 ("[w]e have found no prior case in which an agency has granted a voluntary remand after a court issued a preliminary injunction").  This Court plainly has the power to grant defendants' motion, and doing so would not create a "novel and dangerous" precedent.

## B.  Remand and Stay is Appropriate to Permit the Agency to Seek Comment and Reconsider Its Rule

Whether to exercise the Court's "equitable power" to stay and remand, *Carpenters Indus. Council*, 734 F. Supp. 2d at 133, ultimately lies in the Court's discretion.  Nonetheless, courts ordinarily look favorably on an agency's willingness to reconsider its own decision—particularly in a case such as this when the court preliminarily has found flaws in the administrative proceeding.  Courts have set a low bar recognizing a common interest among the parties and the court in allowing agencies to "cure their own mistakes" through a voluntary remand.  *Ethyl Corp.*, 989 F.2d at 524.  *See SKF*, 254 F.3d at 1029 ("If the agency's concern is *substantial and legitimate*, a remand is usually appropriate." (emphasis added)); *Mineta*, 375 F.3d at 416 ("[W]hen an agency seeks a remand to take further action consistent with correct legal standards,

---

[2] This is not a change of position with respect to expedited summary judgment briefing.  Rather, in light of the Court's holding that the plaintiffs had a likelihood success on the merits, defendants have assessed that it would be prudent to address the procedural issues identified by the Court.  If summary judgment briefing becomes necessary, defendants would urge the Court to adopt a schedule along the lines of that previously proposed.

courts should permit such a remand *in the absence of apparent or clearly articulated countervailing reasons*." (emphasis added)).

Equity favors voluntary remand here.  A remand would give FinCEN the opportunity to reconsider the challenged decision after a new rulemaking proceeding that remedies the procedural issues upon which the Court held plaintiffs would likely succeed on the merits.  That is a "substantial and legitimate" reason for further proceedings, *SKF*, 254 F.3d at 1029. Furthermore, remand would preserve judicial resources without prejudicing plaintiffs.  Defs.' Mot. at 4-8.  In their opposition, plaintiffs take issue with the latter two points (remand would preserve judicial resources and not prejudice plaintiffs), but their arguments are unavailing.

    *1.  Remand would preserve judicial resources*

The Court has held that plaintiffs are likely to succeed on their claim that FinCEN's rulemaking was defective in that (1) it did not provide plaintiffs a meaningful opportunity to comment on non-classified and non-protected evidence on which FinCEN relied, Mem. Op. at 15, and (2) FinCEN did not consider certain alternatives permitted by the statute, Mem. Op.. at 21.  FinCEN has since decided to reopen the rulemaking to give "plaintiffs . . . another opportunity to present new evidence and possibly change the outcome of the rulemaking." Defs.' Mot. at 5.  Through this process, plaintiffs will have access to new information, and will submit new comments that the agency will consider, and "FinCEN's decision [will] be a new evaluation of the totality of the evidence before it."  Defs.' Mot. at 5.

Courts in this Circuit and others confronted with such situations have "preferred to allow agencies to cure their own mistakes rather than wasting the courts' and the parties' resources." *Ethyl Corp.*, 989 F.2d at 524 & n.3 (collecting cases).  Further judicial review of the existing rule would not be an efficient use of the Court's and the parties' resources for three reasons.

First, if the agency were to reconsider or abandon its rule on remand, then adjudication about the validity of the rule—or the modified aspects of the rule or rulemaking—would be unnecessary.  Second, regardless of the outcome, the agency's further consideration could narrow the range of issues presented to the Court for resolution; for instance, some subset of the currently disputed issues may be resolved in plaintiffs' favor on remand.  And third—again, regardless of the outcome of the remand—immediate judicial review at this time would put the parties and the Court in the awkward position of litigating about and adjudicating a rulemaking record that the Court and both parties agree should be supplemented.  This last source of inefficiency—adjudication of an obsolete record—would infect even purely procedural issues in dispute insofar as such issues could be subject to record-dependent harmless error considerations.

Indeed, in light of FinCEN's intention to reopen the rulemaking at issue in this case and the possibility that the Court's consideration of some or all of the challenges raised by plaintiffs could become unnecessary—and the certainty that the current rulemaking record will become obsolete—this case could soon become subject to dismissal on prudential ripeness grounds if the Court were to deny this motion to remand and stay.  *See Wheaton Coll. v. Sebelius*, 703 F.3d 551, 552-53 (D.C. Cir. 2012); *Abbott Labs v. Gardner*, 387 U.S. 136, 148 (1967) (articulating balancing test for prudential ripeness).  That likelihood underscores the fact that the most efficient course at the present time is to stay this proceeding pending further developments in front of the agency.

Plaintiffs cannot reasonably deny that voluntary remand would promote efficiency in any of these ways.  Instead, they argue that immediate judicial review is nonetheless preferable to obtain the Court's perspective on collateral procedural matters separate and apart from the

8

particular procedural issues on which the Court found plaintiffs likely to succeed on the merits. *See* Pls.' Opp. at 12-15.  Indeed, the bulk of their opposition elaborates on why plaintiffs believe that the Court should ultimately adopt their view of those collateral questions.  Pls.' Opp. at 15-26.

According to plaintiffs, the Court will have to resolve these collateral issues eventually, and doing so *in advance* of further agency proceedings would prevent FinCEN from being forced to engage in yet another round of rulemaking if, after a remand that cured the two procedural issues upon which the Court preliminarily found plaintiffs likely to succeed, the Court ruled in plaintiffs' favor on their other procedural challenges.  *Id*. at 12-13 (immediate judicial resolution would save parties "additional months skirmishing at the administrative level").  This argument lacks merit, for two reasons.

First, plaintiffs are wrong to suggest that the possibility of conserving administrative (as opposed to judicial) resources should affect the Court's consideration of whether to grant voluntary remand.[3]  This argument directly undermines the principal consideration supporting the practice of voluntary remand, which is that administrative agencies should have primary responsibility for considering their own actions and "cur[ing] their own mistakes."  *Ethyl Corp.*, 989 F.2d at 524.  Thus, courts considering whether to grant a voluntary remand have inquired

---

[3] Plaintiffs style their argument as one about conservation of judicial resources, Pls.' Opp. at 12-15, but the only actual burden on the Court that they allege would be entailed would be the cost of "get[ting] back up to speed" after "months" of not thinking about these issues.  *Id*. at 14.  The core of plaintiffs' argument focuses on hypothetical savings in the administrative process of moving forward with the benefit of what would amount to an advisory opinion from the Court.  *See id*. at 13 ("the parties could at least return to the administrative proceedings with a clear, shared sense of the operative legal framework").  Defendants submit that any cost associated with refreshing the Court's and parties' memories on the issues in this litigation should it return after remand in substantially similar form would be *de minimis*.  It would therefore be far outweighed by the benefits discussed above and in Defendants' Motion at 3-5.

whether remand would conserve "scarce *judicial* resources," *Carpenters Indus. Council*, 734 F.

Supp. 2d at 134 (emphasis added).  The effort entailed in the agency's exercise of its policy-

making responsibility does not weigh in favor of premature judicial resolution of questions the

Court might otherwise never need to decide.

Furthermore, plaintiffs' position contradicts the bedrock principle of administrative law

that decisions about how to effectuate a remand should be left to the agency, not made by the

Court.  *See Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) (if the Court

proceeds to the merits and finds error, "the proper course . . . is to remand to the agency for

additional investigation or explanation."); *Bennett v. Donovan*, 703 F.3d 582, 589 (D.C. Cir.

2013) ("it is the prerogative of the agency to decide in the first instance how best to provide

relief").  The responsibility for setting agency policy lies with the agency, not the Court; agency

resources devoted to exercising that responsibility are not wasted, they are well-spent.

Second, plaintiffs' argument that a ruling by the Court now would preserve

administrative resources depends on their assumption that the agency will come out the same

way after reconsidering its rule on remand, and that plaintiffs will continue to take issue with all

of the identified aspects of the agency's decision.  *E.g.*, Pls.' Opp. at 1, 8 n.4, 9, 12-14.  But

much can happen on remand; the agency might modify or abandon its rule, or render a decision

that plaintiffs choose not to challenge, or even come to an agreement with plaintiffs.  *See* Aug.

25, 2015 Hearing Tr. at 9:16-19 (Statement of Mr. Shaffer) ("[t]he D.C. Circuit has said that we

cannot presume, in connection with judicial review, how the agency would have acted had there

been a back-and-forth on this"). This argument thus rests on plaintiffs' unfounded speculation that none of these things will happen.[4]

Moreover, plaintiffs also assume incorrectly that the Court's ruling on the merits would address all of their procedural arguments. In order to resolve this case on the merits, however, the Court need rule in favor of plaintiffs on only any one of plaintiffs' challenges to the rule, and it has already preliminarily concluded that plaintiffs are likely to succeed on the two procedural issues that the agency has committed to address on remand. *See* Mem. Op. at 17 (opportunity to comment); *id.* at 21 (consideration of alternatives). Thus, a decision by the Court on the merits of the rule at this time need not address more than one issue raised by plaintiffs, leaving other independently dispositive procedural questions undecided. *Cf. Shands Jacksonville Med. Ctr. v. Burwell*, ___ F. Supp. 3d ____, No. 14-1477, 2015 WL 5579653, at *16 (D.D.C. Sept. 21, 2015) (in light of determination to remand to agency to seek additional comment and reconsider rule, "the Court determines that it need not reach Plaintiffs' remaining challenges").

Finally, defendants note that, to the extent plaintiffs are using their opposition to a remand as a vehicle for reprising certain of their preliminary injunction arguments or previewing these arguments for the summary judgment briefing they are bent on having, such re-litigating or pre-litigating has no place in the Court's consideration of whether to grant a voluntary remand. Defendants further note that plaintiffs make a number of unfounded assertions and misrepresentations regarding FinCEN's position on various issues, its relationship with the Central Bank of Cyprus ("CBC") and other third parties, and information FBME suspects

---

[4] Plaintiffs' suggestion that any remand would be conducted in bad faith, Pls.' Opp. *passim*, runs contrary to the "presum[ption] that executive agency officials will discharge their duties in good faith." *CTIA-The Wireless Ass'n v. FCC*, 530 F.3d 984, 989 (D.C. Cir. 2008). *See infra*. There is also no evidence to support this baseless accusation.

FinCEN has received from the CBC, the details of which the government disputes and is prepared to offer further briefing or information if the Court so requests. Nonetheless, the government reiterates that the only factors relevant to its pending motion are whether a voluntary remand would conserve resources and allow the agency an opportunity to cure potential errors. Those factors clearly weigh in favor of a remand here.

   2.   *A Stay Would Not Prejudice Plaintiffs Because the Rule Would Remain Enjoined*

   Plaintiffs' primary argument regarding prejudice arises out of the decisions of third-party financial institutions to distance themselves from FBME since FinCEN first proposed a rulemaking with respect to FBME in 2014. *See* Pls.' Opp. at 27-28 & nn. 15, 17. Plaintiffs imply that voluntary remand would not relieve this alleged harm, Pls.' Opp. at 27 (voluntary remand would "send the message . . . that FBME remains in the same disabling state of limbo"), but that vacatur after final judgment would.[5] *See id.* ("Anything short of vacatur in this case likely spells death for FBME as it exists today."). Thus, according to plaintiffs, they are prejudiced by a stay, whereas proceeding to final judgment would accord them relief.

   However, it is telling that plaintiffs do not actually argue that vacatur would alleviate these practical harms in a way that the Court's entry of a preliminary injunction has not done. Such an argument would be untenable. Plaintiffs themselves have suggested that harms to FBME were brought about by third-parties' responses to the agency's decision to consider

---

[5] While defendants have moved for voluntary remand without vacatur, the agency has determined that further administrative proceedings are in order in any event. As noted in defendants' status report, FinCEN plans to reopen the enjoined-Final Rule to address certain procedural issues raised by the Court in its order  Another option available to the agency would be to rescind the current Final Rule and to issue a supplemental notice of proposed rulemaking. Given the injunction and defendants' ability to rescind the Final Rule, vacatur is not warranted, but defendants do not dispute that such an action is within the Court's discretion.

enforcement proceedings, not by the final rule itself. *See* Saab Decl. ¶¶ 48-50. Therefore, a decision vacating that rule may do no more to alleviate such harms than did the decision enjoining its effective date. To be sure, the Court found that the Final Rule, were it to take effect, would impose additional irreparable harm on plaintiffs. Mem. Op. at 24-25. But those harms are contingent on the rule *taking effect*. *See, e.g.*, Mem. Op. at 25 ("the Court finds [plaintiffs' submissions] sufficient to establish that FBME stands to lose a substantial portion of its assets once the Final Rule takes effect"). In seeking the preliminary injunction plaintiffs argued that it was warranted to "preserve the status quo," Pls.' Mot. for Prelim. Inj. at 43, ECF No. 3-1 ("FBME simply seeks to maintain the status quo and prevent the implementation of the Final Rule that will destroy its ability to function as an international commercial bank."). The Court's preliminary injunction has already done that, so plaintiffs have not shown that a formal declaration of vacatur would provide plaintiffs added benefit above and beyond the injunction.

Plaintiffs' other arguments that they would be prejudiced are equally unavailing, for the following reasons:

A stay would be of modest duration. Plaintiffs argue that reconsideration of the Rule might take a matter of years, and that the extent of such delay counsels against a stay. Pls.' Opp. at 29. But defendants have proposed a timetable pursuant to which further proceedings would be completed in less than five months. *See* Defs.' Sept. 17, 2015 Status Report at 2, ECF No. 36.

Plaintiffs' right to "a day in court" does not counsel against voluntary remand. Plaintiffs suggest that the Court should not grant voluntary remand because doing so would deny them their "day in court," Pls.' Opp. at 1 ("FinCEN's motion for voluntary remand bids to deny Plaintiffs their fair day in court."); *id.* at 10-11 ("Voluntary remand is inappropriate where it withholds the remedy a plaintiff would obtain upon final judgment"), regardless of whether a

voluntary remand would tangibly prejudice plaintiffs.  Plaintiffs cite *American Forest Resource Council v. Ashe*, 946 F. Supp. 2d 1 (D.D.C. 2013), but that decision actually refutes plaintiffs' argument.[6]  There, the Court started by rejecting the plaintiff loggers' claims that their "right of access to the courts . . . is alone sufficient to prevent voluntary remand without vacatur."  *Am. Forest Res. Council*, 946 F. Supp. 2d at 44.  "If this were the case," the Court held, "then opposed motions for voluntary remand without vacatur would almost never be granted."  *Id.*

However, because the rule at issue in *American Forestry Research Council* was still in effect (unlike the rule at issue here), the Court considered whether declining to vacate would prejudice the loggers in *American Forest Resource Council* in light of their argument that "continued enforcement" of the rule "would prejudice [their] interests in harvesting timber."  *Id.* at 44.  The Court's order enjoining the Final Rule from taking effect makes any such inquiry unnecessary here.[7]

The agency is committed to good faith reconsideration on remand: Third, plaintiffs repeatedly insinuate that FinCEN would not conduct remand proceedings in good faith.  *See, e.g.*, Pls.' Opp. at 27 (agency seeking to make "cosmetic adjustments designed only to stave off judicial review while improving their litigation profile").  Such aspersions directly contradict the

---

[6] In making this argument Plaintiffs cite the standard for remand without vacatur, arguing that standard favors vacatur here.  Pls.' Opp. at 11-12.  That standard is doubly inapposite here, as it governs whether a Court, upon finding a procedural or substantive defect, will vacate and set aside the challenged agency action or merely remand to the agency for further proceedings while leaving the agency action in place.  *See generally Allied Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146 (D.C. Cir. 1993).  Here the rule has never gone into effect (by virtue of the Court's decision enjoining it), and the Court has not rendered a final decision about the procedural or substantive validity of the agency's action.

[7] Plaintiffs' citation to *Chlorine Chemistry Council v. EPA*, 206 F.3d 1286, 1288 (D.C. Cir. 2000), is misplaced for the same reason.  There, as in *American Forest Resource Council* and unlike here, voluntary remand "would have left petitioners subject to a rule they claimed was invalid."  *Chlorine Chemistry Council*, 206 F.3d at 1288.

"presum[ption] that executive agency officials will discharge their duties in good faith." *CTIA-The Wireless Ass'n*, 530 F.3d at 989.  As support for their contrary assumption, plaintiffs point only to the fact that, at the time that FinCEN issued the proposed and final rules, FinCEN officials made public statements about its issuance, Pls.' Opp. at 13, and that as plaintiffs read the tea leaves, the CBC predicts the agency will come out the same way after a remand.  Pls.' Opp. at 27.  Neither consideration supports an inference of bad faith.

The statements of agency officials in which plaintiffs say they "effectively committed themselves to the position already taken," Pls.' Opp. at 13, were issued contemporaneously with the initial notice of finding that FBME was a primary money laundering concern and proposed rule imposing special measures (in July 2014) and then the ultimate Notice of Final Rule (in July 2015).  They say nothing about the agency's plans to effectuate a remand following the Court's decision enjoining the rule.  Rather, they merely explain the officials' expectation that FinCEN's willingness to undertake a Section 311 rulemaking would send a message about FinCEN's commitment to meaningful enforcement of anti-money laundering requirements in the interest of national security.  They in no way commit the agency to any particular course of action in pursuing regulation in general or the voluntary remand in this case in particular.

As for the CBC's prediction of the likely result of any remand, *id*. at 27, it is irrelevant. FinCEN, and not the CBC, will decide this matter on remand, based on a new record. Consistent with this Court's holding, the agency has not prejudged the outcome of the remand and is open to any information or argument that FBME offers.  Dkt. 33 at 17-18. ("the Court declines to presume, one way or the other, whether any response FBME could have provided would have changed the Secretary's mind").

<u>The Court should not consider the availability of EAJA fees</u>.  Finally, plaintiffs explain that they believe that remand would affect their ability to seek attorney's fees at the conclusion of this litigation under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412.  Pls.' Opp. at 30.[8]  But this consideration is of no moment to the question of whether a remand is warranted in light of the circumstances.  Moreover, courts "will not construe a statute to displace courts' traditional equitable authority absent the clearest command."  *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1934 (2013).  Nothing in EAJA suggests any intent to displace or alter the Court's equitable authority to stay proceedings pending remand rather than proceed directly to final judgment.  Therefore, the Court should order voluntary remand because the equities weigh in favor of that result without regard to potential implications for plaintiff's anticipated fee petition.

## CONCLUSION

For the reasons set forth in defendants' motion for voluntary remand and stay and elaborated upon above, defendants respectfully request that the Court stay this litigation pending remand.

Dated: October 16, 2015.

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

VINCENT H. COHEN, JR.
Acting United States Attorney

DIANE KELLEHER
Assistant Branch Director

*/s/Amy E. Powell*

---

[8] It is hard to make sense of plaintiffs' position unless they believe that the government will fix all of the problems on remand and thus they will not prevail on any remaining claims.  Whether plaintiffs would be considered prevailing parties in that scenario need not be addressed now; but plaintiffs' desire to win a fee award clearly should not stand in the way of fixing the errors they claim are harming them.

LYNN Y. LEE (CA Bar No. 235531)
AMY POWELL
MATTHEW LAWRENCE
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20530
Telephone: (202) 305-0531
Fax: (202) 616-8470
Email: lynn.lee@usdoj.gov

*Attorneys for Defendants*