# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |
|---|
| **FBME BANK LTD., et al.,** |
| Plaintiffs, |
| v. |
| **JACOB LEW, in his official capacity as Secretary of the Treasury, et al.,** |
| Defendants. |

Case No. 15-cv-01270 (CRC)

## MEMORANDUM OPINION AND ORDER

This Court recently issued a preliminary injunction against a rule promulgated by the U.S. Department of Treasury's Financial Crimes Enforcement Network ("FinCEN"). Rather than appeal the injunction, move for reconsideration, or continue to defend its rulemaking, FinCEN seeks a do-over: an opportunity to correct any mistakes it might have made the first time around and to promulgate—following proper procedures—the same rule, a new rule altogether, or perhaps even no rule at all. A voluntary remand, FinCEN urges, would respect the agency's desire to correct its own errors, conserve judicial resources, and would not unduly prejudice parties aggrieved by the rule. The Court agrees and, accordingly, will grant FinCEN's motion for voluntary remand and stay the proceedings while FinCEN complies with the Court's remand order.

### I. Background

On August 27, 2015, this Court preliminarily enjoined a Final Rule—promulgated by FinCEN—that would have prohibited domestic financial institutions from maintaining correspondent bank accounts with FBME Bank Ltd. ("FBME"), a Tanzanian-chartered commercial bank that operates mainly in Cyprus. The Final Rule, which was designed to prevent FBME from continuing to do business in the United States or in U.S. dollars, was issued following a finding by

FinCEN that FBME was of "primary money laundering concern" and thus a threat to national security and the U.S. financial system. 31 U.S.C. § 5318A; 79 Fed. Reg. 42639 (July 22, 2014). In issuing its preliminary injunction, the Court indicated that it was "not inclined to second guess FinCEN's exercise of its broad discretion in finding that FBME poses a primary money laundering concern," FBME Bank Ltd. v. Lew, No. 1:15–cv–01270, 2015 WL 5081209, at *2 (D.D.C. Aug. 27, 2015), but nevertheless found that FBME was likely to succeed on the merits of two of its claims against FinCEN: (1) that FinCEN provided insufficient notice of unclassified, non-protected information on which it relied during the rulemaking proceeding, in violation of the notice-and-comment requirement of the Administrative Procedure Act, and (2) that FinCEN failed adequately to consider at least one potentially significant, viable, and obvious alternative to the sanction it imposed, id. at *5.

In light of the Court's ruling, FinCEN requested a "voluntary remand so that it may engage in further rulemaking relating to FBME Bank to address certain procedural issues raised by the court in its order." Defs.' Status Report, ECF No. 33, at 1–2. FBME opposed FinCEN's request and asked for briefing on the issue. Pls.' Proposed Schedule Mots. Voluntary Remand & Summ. J., ECF No. 37. The Court agreed that briefing was warranted and ordered FinCEN to submit a motion for voluntary remand, which FinCEN filed on September 28, 2015. Defs.' Mot. Voluntary Remand & Stay, ECF No. 38 ("Mot. Remand").

In its motion, FinCEN proposes that the Court stay litigation pending a redo by the agency: On remand, "plaintiffs would have the opportunity to respond to unclassified, nonprivileged information on which FinCEN relied in its earlier decision, and FinCEN would consider plaintiffs' responses, as well as any additional information submitted by plaintiffs or others, during the new comment period." Id. at 2. FBME urges the Court instead to deny FinCEN's motion, order

2

expedited summary-judgment briefing, and proceed to render final judgment "without ado." Pls.' Opp'n 2.

**II.    Legal Standard**

Courts "prefer[] to allow agencies to cure their own mistakes rather than wast[e] the courts' and the parties' resources reviewing a record that both sides acknowledge to be incorrect or incomplete." Ethyl Corp. v. Browner, 989 F.2d 522, 524 (D.C. Cir. 1993). As a result, "courts have long recognized the propriety of voluntarily remanding a challenged agency action without judicial consideration of the merits upon an admission of agency error." Carpenters Indus. Council v. Salazar, 734 F. Supp. 2d 126, 132 (D.D.C. 2010). Voluntary remand is typically appropriate "(i) when new evidence becomes available after an agency's original decision was rendered," id. (citing Ethyl Corp., 989 F.2d at 523), "or (ii) where 'intervening events outside of the agency's control' may affect the validity of an agency's actions," id. (quoting SKF USA Inc. v. United States, 254 F.3d 1022, 1028 (Fed. Cir. 2001)). "Even in the absence of new evidence or an intervening event, however, courts retain the discretion to remand an agency decision when an agency has raised 'substantial and legitimate' concerns in support of remand." Id. (citing Sierra Club v. Antwerp, 560 F. Supp. 2d 21, 23 (D.D.C. 2008) (citing cases)). In exercising this discretion, courts should take into account whether the party opposing voluntary remand will be "unduly prejudiced." Am. Forest Res. Council v. Ashe, 946 F. Supp. 2d 1, 47 (D.D.C. 2013). In general, however,

> When an agency seeks a remand to take further action consistent with correct legal standards, courts should permit such a remand in the absence of apparent or clearly articulated countervailing reasons. Otherwise judicial review is turned into a game in which an agency is "punished" for procedural omissions by being forced to defend them well after the agency has decided to reconsider.

Citizens Against Pellissippi Parkway Extension, Inc. v. Mineta, 375 F.3d 412, 416 (6th Cir. 2004). If an agency decides to seek voluntary remand in order to reconsider its action, "it should move the

3

court to remand or to hold the case in abeyance pending reconsideration by the agency." Anchor Line Ltd. v. Fed. Mar. Comm'n, 299 F.2d 124, 125 (D.C. Cir. 1962).

**III.    Analysis**

FinCEN has properly moved this Court for a voluntary remand to reconsider its Final Rule and for a stay of proceedings while it undertakes a new notice-and-comment process and reevaluates potential alternatives. The question for the Court is whether FinCEN has identified substantial and legitimate concerns in support of a voluntary remand, Carpenters Indus. Council, 734 F. Supp. 2d at 132, and whether a voluntary remand would conserve the Court's and the parties' time and resources, Ethyl Corp., 989 F.2d at 524, without causing undue prejudice to FBME, Am. Forest Res. Council, 946 F. Supp. 2d at 47. The Court concludes that FinCEN has identified concerns that may be alleviated by a voluntary remand, that such a remand will serve the interests of judicial economy, and that FBME will not be prejudiced as a result. It will therefore grant FinCEN's motion and allow the agency to correct its own mistakes.

Although FinCEN does not directly confess error, it recognizes that the Court has identified serious "procedural concerns" with the Final Rule, Mot. Remand 1, and it agrees that the "record . . . needs to be supplemented," Defs.' Reply 2. These concerns include both potential inadequacies in the notice-and-comment process as well as FinCEN's seeming failure to consider significant, obvious, and viable alternatives to the sanction it imposed. Id. at 4. Moreover, FinCEN does not challenge the preliminary injunction, nor does it wish to continue to defend its previous rulemaking. FinCEN has thus acknowledged substantial and legitimate concerns with the promulgation of its Final Rule. Nonetheless, the Court, in its discretion, must decide whether voluntary remand is appropriate under the circumstances presented here.

Given the procedural posture of this case, interests of judicial economy counsel in favor of a voluntary remand. FinCEN now recognizes the need to provide "plaintiffs notice and opportunity

4

to comment on the unclassified, non-privileged evidence that was not available to them prior to the issuance of the rule" and to "more explicit[ly] consider[] . . . alternative measures if it finds FBME to be of primary money laundering concern." Mot. Remand 4–5. Continuing to litigate those issues while FinCEN proposes to go back and address potential errors would be inefficient. The Court—and the parties—also have no way of knowing whether FinCEN will ultimately reach the same result on remand. As FinCEN notes, FBME (and the public) "would have another opportunity to present new evidence and possibly change the outcome of the rulemaking, as FinCEN's decision would be a new evaluation of the totality of the evidence before it." Id. at 5. Should FinCEN decide again to promulgate a rule adverse to FBME, then FBME will have the opportunity to challenge the amended rule before this Court.

FBME nevertheless contends that it would suffer prejudice from a voluntary remand. It first argues that it is entitled to receive final judgment on the merits of its claims and that a voluntary remand would interfere with its right to judicial review. Pls.' Opp'n 6. Citing cases dealing with the doctrine of mootness, it argues that FinCEN should not be allowed to "destroy [this] court's jurisdiction by voluntarily ceasing to engage in offending behavior" and thus "evade this Court's forthcoming final judgment." Id. at 7. FBME ignores, however, that FinCEN "agree[s] the Court would retain jurisdiction over this suit," Mot. Remand 2, and that the agency does "not request that the Court decline to issue a final judgment," Pls.' Reply 3. All that FinCEN seeks is a temporary stay to allow it to pursue further administrative action to remedy the likely procedural defects that this Court identified in FinCEN's prior rulemaking. Id. FBME therefore need not fear that the Court, by granting FinCEN's present motion, will lose jurisdiction over the case or that it will be unable to render a final judgment.

Relatedly, FBME advances a policy-based argument that granting FinCEN's motion would thwart the development of precedent in administrative law. In FBME's view, "FinCEN's instant

5

approach to voluntary remand is especially novel and dangerous," because allowing for voluntary remand under these circumstances "would . . . prevent judicial precedent from establishing principled limits" on agency behavior. Defs.' Opp'n 9. This argument is flawed for three reasons. First, while the findings and conclusions in the Court's preliminary-injunction order may not have precedential value as to the ultimate merits of FBME's claims, see Fund for Animals v. Mainella, 335 F. Supp. 2d 19, 27 (D.D.C. 2004), the Court made several holdings—essential to its determination on FBME's motion for a preliminary injunction—that may guide future courts in similar cases and FinCEN's own behavior in future rulemakings. See FBME Bank Ltd., 2015 WL 5081209, at *8 ("Given FinCEN's reliance on [certain] non-classified, non-protected documents, its failure to publicly disclose them during the notice-and-comment period appears to constitute a procedural error under the [Administrative Procedure Act]."); id. at *10 ("FinCEN's authority to impose conditions was an obvious potential alternative to a full prohibition on opening or maintaining correspondent accounts on behalf of FBME."). Although "[c]ase law in this area is limited," id. at *8, the reasoning the Court articulated in its prior opinion has begun to fill that void.

Second, despite FMBE's suggestion to the contrary, Pls.' Opp'n 9, courts have granted voluntary-remand motions following issuance of preliminary injunctions, see Defs.' Reply 4. In Citizens Against Pellissippi Parkway Extension, for example, the Sixth Circuit held that the district court abused its discretion in denying an agency's motion for voluntary remand, which would have allowed the agency to "cure the very legal defects asserted by plaintiffs," in the wake of a preliminary injunction. 375 F.3d at 416. And in Sierra Club v. Kempthorne, No. 07-0216, 2009 WL 323072 (S.D. Ala. Feb. 9, 2009), a district court granted federal defendants' motions for voluntary remand following the court's entry of a preliminary injunction against them and retained jurisdiction during the pendency of remand proceedings. Id. at *1. So, while not necessarily

6

common, there is nothing extraordinary about granting a motion for voluntary remand after preliminarily enjoining an agency rule.

Third, rather than set a dangerous precedent, FinCEN's proposed course of action demonstrates proper agency conduct when an agency is confronted with its own procedural mistakes: offering, in good faith, to take further action to remedy those mistakes consistent with the correct legal standards. FBME complains that FinCEN has taken "the most begrudging and tactical [approach] imaginable," Pls.' Opp'n 9, making its proposal not in good faith, but out of desperation to avoid having to litigate to final judgment. It correctly notes that FinCEN did not raise the possibility of a voluntary remand until the Court issued a preliminary injunction against it. Yet FinCEN, recognizing the Court's "procedural concerns," Mot. Remand 1, is now willing not just to revisit the rule, but to accept in the interim the Court's injunction preventing the rule from going into effect. FinCEN has not made the sort of "novel, last second motion to remand," Lutheran Church-Missouri Synod v. FCC, 141 F.3d 344, 349 (D.C. Cir. 1998), that could indicate bad faith.

In a similar vein, FBME claims that it is "entitled to vacatur of the Final Rule whereas FinCEN proposes now to leave the Final Rule intact," and that therefore "voluntary remand . . . [is] a non-starter." Pls.' Opp'n 10. FBME cites, for instance, Chlorine Chemistry Council v. EPA, 206 F.3d 1286 (D.C. Cir. 2000), for the proposition that denial of voluntary remand is appropriate when an agency makes "no offer to vacate the rule" and the agency's "proposal would have left [plaintiffs] subject to a rule they claimed was invalid." Id. at 1288. Here, however, FinCEN's proposal would *not* leave FBME subject to a rule it claims is invalid. Indeed, FinCEN acknowledges that "the rule is currently enjoined," Mot. Remand 2, and will continue to be

enjoined until the Court reaches final judgment, Order Granting Mot. Prelim. Inj., ECF No. 32. FBME is thus unlikely to be prejudiced by a voluntary remand under these circumstances.

FBME also contends that there are "specific disputes that are certain to vex remand proceedings unless they are resolved first." Pls.' Opp'n 15. In addition to rehashing the issue of whether FinCEN can properly rely on Suspicious Activity Reports ("SARs"), id. at 22–25, FBME complains that FinCEN may "rely on unspecified categories (not just SARs) of *un*classified information without giving FBME any notice of what it is, any opportunity to respond, and any opportunity to contest FinCEN's claimed basis for the withholding," id. at 15. But FinCEN has assured the Court that this unclassified information "will likely be made available in redacted form during the proceedings on remand" and that any "redactions [made to documents containing that information] will be limited and will not remove any substantive information related to the Plaintiffs." Defs.' Notice, ECF No. 47. The Court is satisfied that on remand FinCEN will fulfill its obligations under the Administrative Procedure Act to disclose unclassified information not protected by the Bank Secrecy Act on which it intends to rely.

For the foregoing reasons, the Court concludes that a voluntary remand and stay of proceedings are appropriate. Therefore, it is hereby

**ORDERED** that [38] FinCEN's Motion to Remand is **GRANTED**. It is further

**ORDERED** that, no later than November 30, 2015, FinCEN will publish notice of its intent to reopen the Final Rule and provide relevant unclassified materials to plaintiffs and the public. It is further

**ORDERED** that the deadline for comments on the reopened Final Rule shall be set for no later than two months following FinCEN's notice of intent to reopen the Final Rule. It is further

**ORDERED** that, no later than two months following the deadline for comments, FinCEN will render a decision on the reopened Final Rule. It is further

**ORDERED** that, no later than two weeks after FinCEN renders a decision on the reopened Final Rule, the parties shall meet and confer and submit to the Court a joint status report. It is further

**ORDERED** that this action be **STAYED** pending completion of the remand proceedings.

**SO ORDERED**.

CHRISTOPHER R. COOPER
United States District Judge

Date:   November 6, 2015