IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FBME Bank Ltd.,<br><br>FBME Ltd.,<br><br>   Plaintiffs,<br><br>   v.<br><br>JACOB LEW<br>in his official capacity as Secretary of the Treasury,<br><br>U.S. DEPARTMENT OF THE TREASURY,<br><br>JENNIFER SHASKY CALVERY in her official capacity as Director of the Financial Crimes Enforcement Network,<br><br>FINANCIAL CRIMES ENFORCEMENT NETWORK,<br><br>   Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 1:15-CV-1270 CRC |

**JOINT NOTICE AND REQUEST FOR HEARING**

Plaintiffs FBME Bank Ltd. and FBME Ltd. (together, the "Bank" or "FBME") and Defendants Jacob Lew, the U.S. Department of the Treasury, Jennifer Shasky Calvery, and the Financial Crimes Enforcement Network ("FinCEN") respectfully submit this joint notice seeking the Court's guidance regarding questions of privilege surrounding certain materials in FinCEN's possession. As explained further below, FinCEN received in August 2015 materials that FBME claims were prepared by private investigators who were previously retained by counsel to FBME

to assist in developing FBME's response to FinCEN's Notice of Finding and Notice of Proposed Rulemaking. Thereafter, during the reopened comment period that followed the Court's order for a voluntary remand, FinCEN received a public comment from these investigators containing allegations similar to those made in their August 2015 submission.

Upon recently learning from FinCEN about its receipt of the materials at issue, FBME has expressed its view that these materials are privileged on their face, or else, if they are not self-evidently privileged, should have prompted inquiries and consultations by FinCEN that would establish their privileged status. FinCEN believes that the materials are not privileged and that its handling of them has been appropriate in any event. In light of this fundamental disagreement—and related disagreement about what, if any, remedy is required—the parties submit this joint notice to seek guidance from the Court about how to proceed. While disagreeing in other respects, as set forth below, the parties agree as to the desirability and time-sensitivity of the judicial guidance now sought.

**FBME's Position**

With counsel having met and conferred, FBME agrees with FinCEN as to the propriety of this Court's intervention and joins in requesting it. At the same time, FBME needs to emphasize the gravity of the concerns animating this submission and to part ways with FinCEN on their interplay with the pending administrative proceeding and the appropriate remedy for the conduct described below.

On February 1, 2016, after the reopened comment period closed on January 26, FinCEN disclosed that months earlier, in the summer of 2015 (while the preliminary injunction was being litigated and well before voluntary remand was broached), it had obtained unsolicited affidavits ("Affidavits") from certain investigators whom FBME and its counsel had previously retained to

assist in responding to FinCEN's accusations in its Notice of Finding and Proposed Rulemaking.  FinCEN also disclosed that, in addition to the Affidavits, FinCEN received further comment submitted by one of the investigators (together with the Affidavits, the "Privileged Materials") on January 18 (two weeks before FinCEN made any disclosure) during the reopened comment period on remand.

While saturated with gross, bad-faith distortions and outright falsehoods, even a cursory review of the Privileged Materials reveal that they expressly and self-evidently stem from and convey core attorney-client communications and work product.  Indeed, the Comment and Affidavits say as much on their face, purporting to recount conversations in which FBME's counsel—the very same lawyers (from Quinn Emanuel and Hogan Lovells) representing FBME in this litigation—conveyed their legal advice to FBME's shareholders and senior personnel.  What is more, the Privileged Materials specifically state that the investigators in question wrote to FinCEN only after taking direction from Cypriot officials that, as FBME has repeatedly noted to FinCEN, appear to have been operating in a concerted, bad-faith effort to destroy FBME and to steer FinCEN's proceeding in service of that end.  Despite having obtained the materials months earlier and being on notice of facts more than sufficient to provoke, if nothing else, further inquiry and consultation between counsel, FinCEN silently retained the Affidavits for a period of six months before first disclosing them to FBME two weeks after the ensuing Comment alluded to them.  When it wrote to FBME on February 1, FinCEN purported

only to seek FBME's position on whether the Comment contained any confidential business information that FBME wished to have redacted. *See* Ex. A.[1]

FBME and its undersigned counsel were shocked by these revelations. After immediately asserting privilege over the Privileged Materials, *see* Ex. B, FBME set out at length its objections to FinCEN's mishandling of them, *see* Ex. C. At the same time, FBME demanded that FinCEN immediately destroy the Privileged Materials, turn them over to FBME, or both, along with any other such materials obtained from the relevant sources, and that FinCEN report the extent to which it had used and disseminated the Privileged Materials. After being copied on FBME's letter to FinCEN, the Department of the Treasury's Office of the Inspector General quickly launched inquiries that remain ongoing.

On February 19, FinCEN responded to FBME by letter from its litigation counsel at the Department of Justice. *See* Ex. D. In that response, FinCEN's counsel confirmed that FinCEN had received the Affidavits six months ago, after FBME moved this Court for a preliminary injunction and before FinCEN filed its opposition. Ex. D at 1. According to the response, FinCEN recognized the privilege concerns implicated by the Affidavits and apparently "request[ed] and referr[ed]" them to the Justice Department, which in turn asked an unspecified "attorney not involved in the FBME matter," from an unspecified agency, to evaluate whether they were privileged. *Id.* at 2. Without ever notifying FBME or seeking its position, this mystery reviewer at an unspecified point in time somehow "confirmed" that the Affidavits were not privileged. *Id.* Notably, FinCEN's response offers no substantive account of how FinCEN, the unidentified attorney, or anyone else who reviewed the materials so concluded. *Id.* Instead,

---

[1] At FBME's request, all exhibits cited in this notice, along with both sets of materials that FBME claims are privileged (which have been designated Exhibits E and F), are being filed separately under seal.

the letter confines itself to asserting that "nothing in the *Comment* appeared to be" privileged, *id.* at 2 (emphasis added), without making any corresponding assertion about the Affidavits. In closing, FinCEN's counsel requested that FBME consent to an extension of its time for FinCEN to render a decision beyond the two-month period this Court allotted. *Id.* at 3. To justify such an extension, FinCEN has invoked its need to determine what to do with the Privileged Materials. *Id.* at 3. FinCEN floated that justification despite having offered express assurance to the effect that its repeated review of the Affidavits, on which the Comment rests, is inconsequential because FinCEN will not rely in any way on those submissions.

More information about FinCEN's communications with the investigators continues to come to light. For example, just yesterday, FBME learned upon reviewing the latest round of correspondence forwarded by FinCEN that FinCEN has (at least according to the investigators' counsel) received other communications from the investigators in the course of what the investigators describe as their "cooperat[ion]" with FinCEN and "assist[ance]" in its investigation. FinCEN has yet to disclose these communications to FBME.

FBME respectfully requests that the instant privilege issue be resolved quickly and that any extension of the administrative schedule be strictly confined to the extent necessary to accommodate new decision-makers. Notably, the schedule set by this Court accounted for the extent to which the clock works against FBME, particularly as third parties continue to treat it as a pariah and as CBC continues to move against it, invoking FinCEN's outstanding notices. That dynamic has only worsened as CBC is right now going to extraordinary lengths to liquidate FBME, including both the Cyprus branch and the entire bank itself, under the auspices of FinCEN's rule even before the rule can be finalized and adjudicated. Indeed, the catastrophic consequences that potentially await FBME were demonstrated, yet again, only days ago, when

FinCEN rescinded three notices of proposed rulemaking to impose the fifth special measure. In two cases, the mere threat of the fifth special measure, combined with aggressive action by foreign regulators to revoke licenses, liquidate, and otherwise dismantle FinCEN's target, hastened the banks' demise. *See* Withdrawal of Finding and Notice of Proposed Rulemaking regarding Banca Privada d'Andorra at 3–5, *available at* https://www.fincen.gov/statutes_regs/frn/pdf/Withdrawal_BPA.pdf (Feb. 19, 2016); Withdrawal of Finding and Notice of Proposed Rulemaking Regarding JSC CredexBank at 3–4, *available at* https://www.fincen.gov/statutes_regs/frn/pdf/Withdrawal_JSC.pdf (Feb. 19, 2016); *see also* FBME's Opp. to Defs' Mot. for Voluntary Remand at 29, ECF 40 (describing other cases where FinCEN's threat, along with foreign regulatory action, combined to destroy a target bank). In these circumstances, no extension should be granted absent compelling justification by FinCEN.

One, and only one, such justification seems fairly discernible from FinCEN's response— namely, the need for FinCEN to substitute new, untainted, neutral decisionmakers who can evaluate the relevant comments en route to arriving at FinCEN's final position. It follows that any extension should be limited to the time necessary for those new decisionmakers to be substituted and orientated, which FBME respectfully submits should take no more than an additional two weeks. By no stretch of the imagination, however, might FinCEN have good basis to request more time for awaiting ruling on materials that are self-evidently privileged and that FinCEN has already disavowed substantive reliance upon.

With that background, FBME respectfully submits that the Court should now decide the related questions (1) whether the materials at issue are self-evidently privileged as FinCEN knew or should have known; (2) whether, in the face of any doubt, FinCEN was if nothing else derelict in failing to undertake requisite inquiries and consultations; and (3) whether FinCEN is now

obliged to remediate, and, if so, how.  While differing with FinCEN on the merits and awaiting the Court's guidance on the precise path forward, FBME remains committed to working with FinCEN in good faith towards an appropriate, expeditious procedure for having questions of privilege and remediation adjudicated.

**Government's Position**

As the casualty of escalating cross-fire between FBME and a former contractor of FBME whose relationship has devolved into open antagonism (and separate litigation), the government agrees that it is desirable for the Court to resolve certain issues related to documents that FinCEN received from that contractor, *after* the Final Rule was issued, that FBME claims are privileged. However, the government strongly disagrees with plaintiffs' characterization of how the government handled the documents and the proper course of action going forward in the event the documents are, in fact, privileged.  Further, because it remains unclear to the government what part, if any, of the documents is privileged (or why), and because at least some of the documents were submitted as a comment during the recent comment period for the reopened rulemaking, the government requests the Court's guidance in determining the appropriate way for the agency to proceed.

At the outset, the government stresses that the true driving force behind the current situation is not FinCEN's conduct but an apparent dispute between FBME and certain investigators the bank hired—a dispute in which the government has had no involvement, no control, and no interest except to the extent that it now affects the administrative process of the remand.  In a nutshell, FinCEN has received two separate submissions of documents from individuals who, according to FBME, were hired by its counsel to conduct an independent investigation of the bank following FinCEN's issuance of the notice of proposed rulemaking

regarding FBME in 2014.  FinCEN knew nothing of these investigators until it received an unsolicited e-mail from them last August, after the Final Rule had been issued and FBME had filed suit and moved for a preliminary injunction.  These individuals claimed to have derogatory information about FBME and proffered what appeared to be affidavits setting forth a number of allegations related to FBME ("Unsolicited Materials").  At the time the Unsolicited Materials were received, a small number of FinCEN employees quickly reviewed them and deemed them not relevant to the pending preliminary injunction proceedings because the materials were not part of the record for the Final Rule.[2]  In addition, these FinCEN employees could not assess the credibility of the Unsolicited Materials or their submitters, and thus set them aside.

After the Court granted the government's motion for voluntary remand on November 6, 2015, FinCEN reviewed the relevant evidence related to FBME.  As part of this process, FinCEN employees took a closer look at the Unsolicited Materials and determined that they were not appropriate for consideration on remand because the credibility of the materials and their submitters could not be evaluated.  FinCEN further determined that it would be appropriate to make sure that the materials were not privileged, and referred this inquiry to the Department of Justice ("DOJ").  DOJ subsequently asked an attorney not involved in the FBME matter to conduct an independent "filter" review of the Unsolicited Materials.  This attorney concluded that the Unsolicited Materials were not attorney-client privileged.

On January 18, 2016, FinCEN received a comment ("Comment") from the same individuals who had previously submitted the Unsolicited Materials.  Unlike the other comments FinCEN received that related to the reopened FBME rulemaking, the Comment has not yet been

---

[2] FinCEN also promptly informed the Department of Justice ("DOJ") of its receipt of the Unsolicited Materials.  To date the undersigned counsel have not reviewed these materials.

published. Indeed, FinCEN refrained from publishing the Comment because the agency was concerned that it might arguably contain FBME's confidential business information and thus believed that it was appropriate to permit FBME to review and redact the Comment before publication. The Comment also contains what may be a reference to the Unsolicited Materials and allegations of a similar nature to those contained in the Unsolicited Materials.

On February 1, 2016, FinCEN submitted the Comment to FBME for review and redaction. *See* Ex. A. Because the Comment appeared to refer to the Unsolicited Materials, FinCEN also included the Unsolicited Materials in its communication with FBME, noting that FinCEN did not intend to include or rely on the Unsolicited Materials in the ongoing rulemaking. FBME responded by asserting attorney-client privilege and work product over both the Unsolicited Materials and the Comment, suggesting all manner of bad faith on behalf of the government, and making a long list of demands. *See* Ex. C. Although the government does not believe any of the material to be subject to the attorney-client privilege and currently lacks information to determine whether any of it is work product, the government has attempted to work with plaintiffs to reach an amicable resolution without success. *See* Ex. D.[3]

FinCEN is willing to destroy or return the copies of the Unsolicited Materials in its possession as it has no interest in relying on or considering those materials. FinCEN is generally required by law, however, to publish and consider comments on a public rulemaking. Indeed, the submitters of the Comment have asked FinCEN about the status of the comment, and their

---

[3] Plaintiffs assert that the undersigned counsel's February 19 letter "confines itself to asserting that 'nothing in the Comment appeared to be' privileged…without making any corresponding assertion about the [Unsolicited Materials]." As noted above and in DOJ's letter, the undersigned counsel has not reviewed the Unsolicited Materials, but the DOJ "filter" attorney who separately reviewed the Unsolicited Materials concluded they were not attorney-client privileged. *See* Ex. D.

counsel recently sent FinCEN a letter expressing concern that FinCEN had advised FBME of the fact that they had submitted the Comment. *See* Ex. G.[4] FinCEN has no role to play in a consulting engagement gone awry and simply seeks to discharge its administrative obligations in connection with the remand from this Court and its reopened rulemaking. While nothing on the face of the Comment appeared to be privileged, the government is willing to consider re-evaluating that assessment. If the Court or a neutral arbiter appointed by the Court (such as a magistrate judge) makes a determination of privilege as to the Comment, that will assist FinCEN in determining whether to include the Comment in its decisionmaking process. However, the government notes that to date FBME has offered no legal support for the proposition that the entire FinCEN team currently working on the FBME matter must be removed from the decisionmaking process simply because they happened to review material *that was submitted as a public comment* during the notice and comment period.

With respect to the Unsolicited Materials, the government submits that whether or not they are privileged should not impact the ongoing administrative process, given that FinCEN has affirmed that the Unsolicited Materials will not be considered or made part of the administrative record, and is willing to destroy or return all copies within its control. Again, contrary to plaintiffs' unsupported representations, the mere fact that certain FinCEN employees may have been exposed to the Unsolicited Materials does not require these employees to be prevented from working on the FBME matter. Rather, the appropriate course, which FinCEN has already

---

[4] As demonstrated in the correspondence attached at Exhibit G, the commenters have been engaged in an acrimonious and long-running dispute with FBME that does not and should not involve FinCEN, despite the efforts of both the commenters and FBME to inject their dispute into the current administrative proceedings. FinCEN, of course, has no control over what third parties choose to submit to it, but also has no reason to be involved in their side conflicts with plaintiffs.

undertaken, is to exclude the Unsolicited Materials from the administrative record or decisionmaking process.

Finally, the government notes that according to the remand schedule set forth in the Court's November 6 order, FinCEN is required to render a final decision on the reopened rule by the end of March. While FinCEN is currently on track to meet that deadline, it cannot complete the process without knowing whether or not it may consider the Comment that plaintiffs contend is privileged. Therefore, depending on whether the Court finds the material privileged, what course is deemed appropriate if the material is privileged, or how long it takes to resolve these questions, FinCEN may need a reasonable extension of time to complete the decisionmaking process.

Accordingly, the government respectfully submits that the Court should advise the parties on how to resolve the following: (1) whether the Comment is privileged; (2) if it is privileged, the appropriate course of action; (3) whether the government need do anything further with respect to the Unsolicited Materials other than exclude them from the rulemaking process; and (4) whether an extension of time to complete the remand is appropriate, given that these issues directly affect FinCEN's decisionmaking process.

## **CONCLUSION**

For the foregoing reasons and in the foregoing respects, both parties jointly and respectfully request this Court's guidance.

Dated: February 26, 2016

Respectfully submitted,

| | |
|---|---|
| QUINN EMANUEL URQUHART & SULLIVAN LLP | BENJAMIN C. MIZER<br>Principal Deputy Assistant Attorney General |
| */s/ Derek L. Shaffer*<br>Derek L. Shaffer (D.C. Bar No. 478775)<br>William A. Burck (D.C. Bar No. 4015426)<br>Lauren H. Dickie (IL Bar No. 6286037)<br>Jonathan G. Cooper (D.C. Bar No. 999764)<br>777 Sixth Street NW, 11th Floor<br>Washington, D.C. 20001<br>(202) 538-8000 | CHANNING D. PHILLIPS<br>United States Attorney<br><br>DIANE KELLEHER<br>Assistant Branch Attorney<br><br>*/s/ Lynn Y. Lee*<br>Lynn Y. Lee (CA Bar No. 235531)<br>Amy E. Powell |
| HOGAN LOVELLS US LLP | Trial Attorneys<br>United States Department of Justice<br>Civil Division, Federal Programs Branch |
| */s/ Peter S. Spivack*<br>Peter S. Spivack (D.C. Bar No. 453731)<br>J. Evans Rice III (D.C. Bar No. 481768)<br>555 Thirteenth Street NW<br>Washington, D.C. 20004<br>(202) 637-5600 | 20 Massachusetts Avenue NW<br>Washington, D.C. 20530<br>Telephone: (202) 305-0531<br><br>*Attorneys for Defendants* |
| *Attorneys for Plaintiffs* | |