**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **FBME BANK LTD.**, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>**JACOB LEW**, in his official capacity as Secretary of the Treasury, *et al.*,<br><br>Defendants. | Case No. 15-cv-01270 (CRC) |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO DEPOSE OR CROSS-EXAMINE, OR, IN THE ALTERNATIVE, TO STRIKE**

Plaintiffs FBME Bank Ltd. and FBME Ltd. (together, "FBME") have moved this Court to authorize a cross-examination or deposition of Mr. Richard May; or, alternatively, to strike his declaration. ECF 72. The Government submitted the declaration of Mr. May, Director of the Office of Special Measures within the Enforcement Division of FinCEN, in opposition to FBME's Motion to Supplement the Administrative Record (the "May Declaration"). ECF 67-1. FinCEN continues to oppose FBME's motion, ECF 75, and FBME hereby replies.

**ARGUMENT**

**A. The May Declaration Is Without Factual Support and Should Be Tested**

The May Declaration is an extraordinary submission, one that is unfit for consideration unless and until its factual content (if any) has been tested through the adversarial process. None of the cases that the Government cites (ECF 75 at 3–4) as supporting consideration of agency declarations outside of the administrative record applies here, where the agency has submitted a conclusory and contested declaration advancing new, tendentious claims. *See Clifford v. Pena*, 77 F.3d 1414, 1418 (D.C. Cir. 1996) (agency properly supplemented the record

with a declaration in part because it "provide[d] . . . information . . . *well known* to the agency *and to the parties*" (emphasis added)); *Olivares v. Transportation Security Admin.*, No. 15-0001, 2016 WL 1535072, at *7 (D.C. Cir. Apr. 15, 2016) ("The critical point is that the Vara Declaration contains 'no new rationalizations'; it is 'merely explanatory of the original record,' and thus admissible for our consideration.").

Likewise, although the Government is correct that discovery in APA cases is atypical (ECF 75 at 4), the cases cited by the Government do not address the extraordinary circumstances here, where the agency seeks to expand the administrative record after the fact with a declaration offering new factual claims that have neither been subjected to comments at the administrative level nor otherwise tested. The Government's cases stand only for the unremarkable proposition that a party cannot generally use discovery to flesh out the administrative record. *See Baptist Memorial Hospital Golden Triangle v. Sebelius*, 566 F. 3d 226, 230 (D.C. Cir. 2009) (party's claim of an inadequate administrative record does not by itself warrant discovery); *Citizens To Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971) (agency officials can be required to testify *about the agency action* only upon a showing of bad faith).

These cases are inapposite because FBME is not affirmatively seeking run-of-the-mill discovery into FinCEN's rulemaking as a means of circumventing the administrative process. Rather, it is the *Government* that is seeking to rely on an extra-record, outside-the-lines submission; FBME is merely seeking a fair examination of that submission. The best the Government can take from its cases is a rule that generally forbids the Court from looking beyond the administrative process to consider something like the May Declaration. To the extent that the Government would *nonetheless* have the Court consider the May Declaration, however, it has very clearly "opened the door" to a deposition or cross-examination such that the

"plaintiff, in fairness, should have a chance to question the affiant on the matters raised in [his] affidavit." *Saxon Corp. v. U.S. Air Force*, 1987 WL 8531, at *2–3 (D.D.C. Mar. 5, 1987) (ordering deposition of agency affiant); *see also G-I Holdings, Inc. v. Baron & Budd*, 213 F.R.D. 146, 149 (S.D.N.Y. 2003) (ordering deposition of affiant because "untested affidavits are not acceptable").

### B. Examination of Mr. May Is Consistent With D.C. Circuit Law Requiring an Evidentiary Hearing in These Circumstances

The Government continues to give short shrift to governing law requiring an evidentiary hearing in the face of potential taint. *E.g.*, *Professional Air Traffic Controllers Organization v. FLRA*, 672 F.2d 109, 113 & n.7 (D.C. Cir. 1982); *Home Box Office, Inc. v. FCC*, 567 F.2d 9, 58–59 (D.C. Cir. 1977); *Sangamon Valley Television Corp. v. United States*, 269 F.2d 221, 225 (D.C. Cir. 1959). The Government tries to dismiss these cases because they "primarily involve improper *ex parte* communications." ECF 75 at 6. Yet the communications here *were ex parte*: FinCEN alone secretly received the privileged affidavits, reviewed them, and retained them for six months, before first notifying FBME of their existence *after* the comment period had closed. ECF 51 at 3; ECF 52-1. So this case poses the *same* problem those cases did, while making matters still *worse* by adding *another* problem—flagrant violation of attorney-client privilege amidst active litigation with an opposing party and its counsel. ECF 51 at 2–7.

Even setting aside the *ex parte* nature of the communications, the general principle of *Sangamon*, *Home Box Office*, and *Professional Air Traffic Controllers* still applies. Those cases call for an evidentiary hearing whenever there is a legitimate concern that an "improper influence tainted [an agency's] decisionmaking processes." *Professional Air Traffic Controllers*, 672 F.2d at 113. And this precedent would be circumvented all too easily if the Government could instead purport to dispel any concern about taint simply by filing something

as conclusory, untested, self-serving, and convenient as the May Declaration. Surely the bare minimum the Government must do, short of an evidentiary hearing, is produce Mr. May for adversarial examination. It is telling, therefore, that the Government resists even that.

### C. The Government Cannot Refute That the May Declaration Is Conclusory and Inadmissible

The Government also fails to demonstrate that the May Declaration is anything but conclusory and inadmissible. In its brief, the Government contends that the May Declaration is based on personal knowledge because "[t]he Director of the Office of Special Measures has personal knowledge of the information reviewed and transmitted by his office in connection with this rulemaking" (ECF 75 at 5), but the May Declaration does *not* so attest. To the contrary, the May Declaration omits any description of the functions of the "Director of the Office of Special Measures" or how Mr. May personally came to know about everything other FinCEN employees may have "reviewed and transmitted." All the May Declaration states is that he is "familiar" with (1) "the mission of and operations of FinCEN"; (2) the relevant notices and rules; (3) "the interactions between FinCEN and FBME and its counsel"; and (4) "FBME's filings in this matter." ECF 67-1 ¶ 1. We—FBME's counsel—are *also* "familiar" with *each* of these things, yet we lack personal knowledge of who at FinCEN reviewed and considered what. Again, it is telling that the only supposed warrant for Mr. May's sweeping (and convenient) conclusion that FinCEN received and carefully reviewed the Privileged Materials without "consider[ing] them," ECF 67-1 ¶ 3, is now coming from the Government's briefing—not from any attestation or follow-up examination of FinCEN's supposed witness.

It is especially difficult to fathom how Mr. May could have *personal* knowledge of what materials the ultimate decisionmaker, Deputy Director Jamel El-Hindi, considered. The Government claims in its brief that Mr. El-Hindi "reviewed" *only* "the record as it was certified

and submitted to the Court" (ECF 75 at 6), but there is no factual support for that assertion in the May Declaration (or anywhere else). Moreover, the Government conspicuously refuses to identify or discuss who at FinCEN "reviewed the Disputed Materials" (ECF 75 at 8), even though these individuals are a conduit for influencing Mr. El-Hindi and the Second Final Rule. Any proof of what Mr. El-Hindi directly or indirectly considered should come from Mr. El-Hindi and the FinCEN officials who reviewed the Privileged Materials; Mr. May could speak to what Mr. El-Hindi considered only by speculating or by repeating inadmissible hearsay. That is presumably why the D.C. Circuit requires an evidentiary hearing in this circumstance, without suggesting a conclusory three-paragraph declaration from a single agency official could ever suffice to eliminate a potential taint. *E.g.*, *Professional Air Traffic Controllers*, 672 F.2d at 113.

The Government contends that, because Mr. May certified the administrative record, he must have personal knowledge of everything the agency considered. ECF 72 at 2, 4–5. That is untrue. Perhaps Mr. May *should* know what materials the agency considered, but the fact that he certified the record does not logically entail that he *does* know. Indeed, the Government has already conceded that his certification is not completely accurate: after Mr. May certified the record, FBME identified another document it believed FinCEN had considered, and FinCEN agreed that it had considered it (even though it was not part of the record certified by Mr. May) and added it to the record. ECF 74 at 1.

Moreover, in the extraordinary circumstances present here, there is cause for concern that Mr. May and FinCEN may be bending over backwards to forestall further inquiry into the obvious, troubling taint that has otherwise infected this proceeding and this agency. That is the best explanation for why the Government works so hard to distinguish "look[ing] at" materials over a period of months, which FinCEN confessedly did, from "considering" the materials,

which Mr. May asserts FinCEN did not do. ECF 75 at 7. Of course, the Privileged Materials are not some peripheral documents that an agency employee casually glanced at one time, only to discard and forget. One of the Privileged Materials is a *comment* on the rule and, as FinCEN noted, the agency is "generally required by law . . . to publish *and consider* comments on a public rulemaking." ECF 51 at 9 (emphasis added). This obligation so concerned FinCEN that it asked this Court to rule whether it lawfully could "exclude" the Privileged Materials from the rulemaking process (which the Court refused to do). *Id.* at 11. Common sense as well as the record now lead to one natural conclusion: FinCEN reviewed these Privileged Materials carefully enough to register their contents in the course of this rulemaking. That suffices to establish that the Privileged Materials "might have influenced" the final agency action. *Banner Health v. Burwell*, 126 F. Supp. 3d 28, 59 (D.D.C. 2015) ("[A] complete administrative record should include all materials that might have influenced the agency's decision.").

Thus, far from being "unsupported assertions" (ECF 75 at 8), there is ample basis for doubting Mr. May's conclusory assertion that the Privileged Materials had no influence whatsoever on the Second Final Rule. To the extent that Mr. May and FinCEN nonetheless want to stand on his assertion, Mr. May ought to answer questions about exactly what the substance of that assertion is and how, why, and when he came to it. We remain ready and eager to ask those questions just as soon as the Court may permit.

Finally, absent examination, the May Declaration should be struck as conclusory and inadmissible. *See Londrigan v. FBI*, 670 F.2d 1164, 1174 (D.C. Cir. 1981) ("[The] requirement of personal knowledge by the affiant is unequivocal, and cannot be circumvented."); *Judicial Watch, Inc. v. U.S. Department of Commerce*, 224 F.R.D. 261, 264 (D.D.C. 2004) ("[S]tatements that are impermissible hearsay, conclusory or self-serving are generally precluded." (collecting

cases)). Notably, striking of the May Declaration seems to be the result half-endorsed by the Government. *See, e.g.*, ECF 75 at 8 n.3.

**CONCLUSION**

For the foregoing reasons, FBME respectfully requests that the Court grant the motion and order a deposition or cross-examination of Mr. Richard May; or alternatively, strike his declaration.

Dated: June 1, 2016

Respectfully submitted,

QUINN EMANUEL URQUHART &
SULLIVAN LLP

*/s/ Derek L. Shaffer*

Derek L. Shaffer (D.C. Bar No. 478775)
William A. Burck (D.C. Bar No. 979677)
Lauren H. Dickie (IL Bar No. 6286037)
Jonathan G. Cooper (D.C. Bar No. 999764)
777 Sixth Street NW, 11th Floor
Washington, DC 20001
(202) 538-8000

HOGAN LOVELLS US LLP

*/s/ Peter S. Spivack*

Peter S. Spivack (D.C. Bar No. 453731)
J. Evans Rice III (D.C. Bar No. 481768)
555 Thirteenth Street NW
Washington, DC 20004
(202) 637-5600

*Attorneys for Plaintiffs*
*FBME Bank Ltd. and FBME Ltd.*

**CERTIFICATE OF SERVICE**

I certify that on June 1, 2016, I electronically filed the foregoing Motion with the Clerk of the Court using the Court's ECF system, which will send notice of this filing to all parties.

*/s/ Derek L. Shaffer*
Derek L. Shaffer