**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **FBME BANK LTD.**, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>**JACOB LEW**, in his official capacity as Secretary of the Treasury, *et al.*,<br><br>Defendants. | Case No. 15-cv-01270 (CRC) |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' CONSULTATION DECLARATION**

## INTRODUCTION

By Minute Order on June 3, 2016, this Court invited the Government to file a declaration "detailing FinCEN's compliance with applicable statutory consultation requirements." On June 10, the Government filed a three-paragraph declaration by Richard May (ECF 79-1)—the second conclusory declaration by Mr. May in the past month (*compare* ECF 67-1). This Second May Declaration not only fails to provide any semblance of "detail[]" about FinCEN's consultations, but it also seems designed to frustrate judicial review of whether, in concrete substance, any particular steps taken by FinCEN, at any particular time, relative to any particular consultee(s), satisfy the consultation requirements of § 311 (31 U.S.C. § 5318A).

## ARGUMENT

### I. THIS COURT SHOULD NOT CONSIDER THIS LITIGATION AFFIDAVIT

The Second May declaration is altogether unworthy of consideration. It remains black-letter administrative law that a Court reviewing an agency action should confine its review to the administrative record and ignore "litigation affidavits." *Citizens To Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419–20 (1971); *AT&T Information Systems v. GSA*, 810 F.2d 1233, 1236

(D.C. Cir. 1987) ("we have repeatedly applied [this rule] to bar introduction of litigation affidavits to supplement the administrative record"). Although an agency can supplement the administrative record to provide "such additional explanation of the reasons for the agency decision as may prove necessary," *Camp v. Pitts*, 411 U.S. 138, 142–43 (1973), that exception "may not be employed to offer post-hoc rationalizations where no rationalization exists." *AT&T*, 810 F.2d at 1236 (refusing to consider an agency's litigation affidavit). Permissible supplementation therefore cannot provide "new explanations"; all it can do is amplify or clarify an aspect of the extant administrative record. *Appeal of Bolden*, 848 F.2d 201, 207 (D.C. Cir. 1988).

The Second May Declaration does not attempt to amplify or clarify the administrative record. Instead it purports to expand the record by supplying brand-new information about FinCEN's supposed consultation efforts. The Declaration does not cite to any portion of the existing administrative record that it is elucidating, nor is it accompanied by any contemporaneous documentation of consultation that was mistakenly omitted from the administrative record.[1] Its purpose is to inject the new and unsupported *post hoc* contention

[1] The Government has claimed that such materials are protected by the deliberative-process privilege, but that is erroneous. This privilege protects materials only if they are "predecisional." *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). When officials at one agency have a statutory duty to consult with a second agency, the initial inter-agency communications could be predecisional, but the final recommendation of the second agency is the "consummation" of that agency's "decisionmaking process," and therefore is not "predecisional." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). In no event, of course, would the deliberative-process privilege possibly justify withholding any specifics and substantiation that underlie Mr. May's conclusory assertions. Should this Court have any doubt about whether certain consultation materials are privileged, the proper course would be for FinCEN to submit the materials for *in camera* review. *See Northwest Environmental Advocates v. U.S. EPA*, 2009 WL 349732, at *3, 6–7 (D. Or. Feb. 11, 2009) (reviewing consultation materials *in camera* to determine if they were protected by deliberative-process privilege).

that FinCEN carried out its statutory responsibilities. *Overton Park* and *AT&T* forbid this attempt by FinCEN to use a litigation affidavit to go where the administrative record does not.

## II. FINCEN DID NOT CONSULT THE PROPER OFFICIALS

Assuming for the sake of argument that this Court can consider the Second May Declaration and that the Declaration's conclusory assertions are credited on their face, the Declaration by its terms fails to show that FinCEN conducted the three consultations required by § 311. *See* ECF 62-1 at 4–6 (describing the consultation requirements).

Section 311 requires the three consultations to include three specific federal *officials*: (1) the "Secretary of State" (for all three consultations), (2) the "Attorney General" (for two of the three) and (3) the "Chairman of the Board of Governors of the Federal Reserve System" (for two of the three). 31 U.S.C. § 5318A(a)(4)(A), (b)(5), (c)(1). Separately, § 311 also requires consultation with certain federal *agencies* when selecting which special measure to take: "the Securities and Exchange Commission," the "Commodity Futures Trading Commission, "the National Credit Union Administration Board," and "any other appropriate Federal banking agency." § 5318A(a)(4)(A). Congress thus clearly delineated between consultations that had to involve a particular official (the Secretary of State, the Attorney General, and the Chairman of the Federal Reserve) and those that could be with any representative of an agency (the SEC, the CFTC, the NCUA, and other banking agencies).

It is now all too clear that FinCEN failed to consult the *officials* specified by statute. Mr. May avers that "FinCEN consulted with *representatives* of the Chairman of the Board of Governors of the Federal Reserve System, the Secretary of State, the Attorney General, the Securities and Exchange Commission, the Office of the Comptroller of the Currency, the Commodity Futures Trading Commission, the Federal Deposit Insurance Company, and the National Credit Union Administration Board." ECF 79-1 ¶ 3 (emphasis added). Consulting

with *representatives* of the Secretary of State, of the Attorney General, and of the Chairman of the Federal Reserve does not satisfy the express terms of § 311.[2] FinCEN's claimed consultation thus falls short of what the statute expressly requires.

We anticipate that FinCEN may nonetheless contend that the Secretary of State, the Attorney General, and the Chairman delegated their consultation duties to these unidentified "representatives." Such a lawful delegation might, to be sure, enable specified delegates to fulfill the consultation duties that Congress initially assigned to the Secretary of State, the Attorney General, and the Chairman. *Cf.* 28 U.S.C. § 510 (authorizing the Attorney General to delegate functions).

But there must have been a lawful delegation, and here one is neither apparent nor claimed. It is unlawful for "representatives" to carry out duties Congress has assigned to particular federal officials unless those officials have lawfully delegated their duties to the representatives. *United States v. Giordano*, 416 U.S. 505 (1974); *Halverson v. Slater*, 129 F.3d 180 (D.C. Cir. 1997). Despite conducting exhaustive research, we have been unable to locate lawful delegations by the Secretary of State, the Attorney General, or the Chairman of their § 311 consultation responsibilities. If such delegations had occurred, we expect either that they would

[2] There is arguable ambiguity (intentional or not) in Mr. May's use of the modifier "representatives of." If that modifies *only* the *first* term in the series of nouns it precedes, it would mean that FinCEN consulted with representatives *only* of the Chairman of the Federal Reserve yet consulted with the Secretary of State and the Attorney General himself and herself. But that reading is hardly the natural one. "When there is a straightforward, parallel construction that involves all nouns or verbs in a series," a modifier at the beginning of the list "normally applies to the entire series." Antonin Scalia & Bryan A. Garner, *Reading Law* 147 (2012). To the extent we may be misreading Mr. May as indicating that FinCEN relied upon consultations only with *representatives* of each of the officials named in the statute, he and FinCEN are welcome to correct us. In any event, FinCEN's consultation with "representatives of the Chairman of the Board of Governors of the Federal Reserve" by itself fails to satisfy the express requirements of § 311 that FinCEN consult directly with the Chairman.

be publicly available or that Mr. May would have attached them to his declaration—or else, at the very least, made some reference to them. Likewise, if FinCEN had consulted *specific* representatives who were *specifically* the recipients of lawful delegations, Mr. May should have so attested, but he has not.

Lawful delegations of statutory responsibilities and obligations should not be tough to spot. For instance, the Secretary of the Treasury has published his delegation to the Director of FinCEN of his § 311 responsibilities. *See* Treasury Order 180-01 § 3(b) (July 1, 2014), https://goo.gl/xQARSA. Similarly, any number of lawful delegations, including as to consultation obligations, have been publicly spelled out in other contexts by the Secretary of State, the Attorney General, and the Board of Governors of the Federal Reserve. *E.g.*, 71 Fed. Reg. 38202, 38203 (July 5, 2006) (delegation by the Secretary of State of a consultation function); 28 C.F.R. § 0.20 (Attorney General); 12 C.F.R. § 265.9(b) (Board of Governors of the Federal Reserve). Notably, any lawful delegation by the Board of Governors of the Federal Reserve *must* be accomplished "by published order or rule," which has not happened for the § 311 consultation duties at issue here. 12 U.S.C. § 248(k).

Because FinCEN does not claim to have consulted the officials expressly designated by Congress, and because these officials have not lawfully delegated their § 311 consultation duties to whomever FinCEN did consult, FinCEN's claimed consultations are legally defective.

## III. FINCEN HAS FAILED TO SATISFY ADDITIONAL ASPECTS OF THE CONSULTATION REQUIREMENTS

Beyond the failure to establish *who* FinCEN consulted, the Second May Declaration also fails to establish the *when*, the *what*, and the *how* that are essential to this Court's review. Rather than provide *details* of FinCEN's consultations, as this Court ordered, the Second May Declaration instead tries to stymy intelligent inquiry with two vague and impenetrable sentences:

> In accordance with the statute, FinCEN consulted with representatives of the Chairman of the Board of Governors of the Federal Reserve System, the Secretary of State, the Attorney General, the Securities and Exchange Commission, the Office of the Comptroller of the Currency, the Commodity Futures Trading Commission, the Federal Deposit Insurance Company, and the National Credit Union Administration Board, to include sharing drafts and information for the purpose of obtaining inter-agency views and recommendations on the selection of special measures (if any) to be imposed on FBME, the imposition of a prohibition of correspondent accounts or payable through accounts by any domestic financial institution or domestic financial agency for or on behalf of FBME, and the finding that FBME is of primary money laundering concern. These consultations occurred before issuing the July 2014 Notice of Finding and Notice of Proposed Rulemaking, before issuing the July 2015 Final Rule, and again before issuing the March 2016 Final Rule.

ECF 79-1 ¶ 3. This statement is studiously opaque. It seems to indicate that FinCEN engaged in consultations on three occasions, albeit at unidentified times "before" July 2014, "before" July 2015, and "before" March 2016. No specifics are provided about, *e.g.*, what the nature of the supposed consultations was; how they occurred; the dates on which they occurred; the specific participants; the points touched upon; whether any feedback to FinCEN resulted; whether the interactions were divided into phases as contemplated by the statute; the extent to which the interactions, participants, or protocols may have differed as between the periods preceding the "July 2014 Notice of Finding and Notice of Proposed Rulemaking," versus "the July 2015 Final Rule," versus "the March 2016 Final Rule"; whether and how comments received from FBME and others were accounted for; and whether the consultations pointed to the same or different outcome from the one FinCEN reached. The Declaration forecloses any conclusion as to whether *each* of the three consultations separately covered what (precious little) Mr. May claims, or whether *all* of them cumulatively did. *Compare American Rivers v. U.S. Army Corps of Engineers*, 271 F. Supp. 2d 230, 255 (D.D.C. 2003) (agency segmentation of consultation requirement was unlawful). Mr. May may well be attesting as he is because, for instance, someone at FinCEN simply included certain agency "representatives" on an e-mail attaching the

proposed final rule under a "cc" or "FYI," and FinCEN considers that good enough while fearing this Court may disagree.

All the Second May Declaration does, in sum, is add a conclusory attestation to the agency's legal contention that it consulted.[3] That is insufficient. To the contrary, courts require more so that they can play their proper role in ascertaining whether the procedures laid down by Congress have or have not been met. The Government's suggestion that the conclusory Second May Declaration carries its burden of proving that it satisfied § 311's consultation requirements is irreconcilable with decisions such as *California Wilderness Coalition v. U.S. Department of Energy*, 631 F.3d 1072, 1085–96 (9th Cir. 2011), and *Campanale & Sons, Inc. v. Evans*, 311 F.3d 109, 116–21 (1st Cir. 2002), in which the Ninth Circuit and the First Circuit rejected unsupported claims by agencies that they performed the requisite statutory consultations. These decisions foreclose any notion that an agency's word on the subject, whether it comes via affidavit or brief, can by itself establish the fact of requisite consultations. The courts have demanded specifics. When those specifics are absent, these decisions make clear that courts should not hesitate in concluding that consultation requirements have not been met, notwithstanding the agency's contrary view.

Stated simply, the consultation defects identified in *California Wilderness Coalition* and *Campanale* could not have been obviated by the simple expedient of the defendant agencies dressing their contentions up in conclusory declarations. Rather, the fundamental problem was that the agencies were *wrong* in their contentions, because the substantive specifics supplied by

---

[3] It is not beyond FinCEN's capabilities to file a declaration that is rich in detail and specifics. The conclusory nature of Mr. May's declarations is all the more conspicuous because it contrasts so strikingly with the Declaration of (former) FinCEN Director Jennifer Shasky Calvery, which ran 64 paragraphs. ECF 20.

the record did not evidence *meaningful* consultations to the satisfaction of the reviewing courts. 631 F.3d at 1085–96; 311 F.3d at 116–21. Judged by that standard, the Second May Declaration supplies nothing beyond a tacit confession that the requisite substantive specifics that might evince meaningful consultation are lacking here.

## IV. THE PRESUMPTION OF REGULARITY DOES NOT APPLY

The Government has previously argued that it is owed a presumption of regularity that negates any claim that it failed to satisfy its consultation duties. ECF 73 at 41. That is incorrect for multiple reasons. For starters, the presumption of regularity "is rebutted" where "the agency has arrived at an identical result after remand from a reviewing court for further explanation of reasons." *NRDC, Inc. v. SEC*, 606 F.2d 1031, 1049 n.23 (D.C. Cir. 1979); *accord, e.g.*, *Chamber of Commerce of the United States v. SEC*, 443 F.3d 890, 899 (D.C. Cir. 2006). This Court already remanded this matter back to FinCEN once for further explanation of its application of the fifth special measure to FBME (*see* ECF 49), and FinCEN reached the identical result on remand (*compare* 80 Fed. Reg. 45057 (July 29, 2015) (First Final Rule), *with* 81 Fed. Reg. 18480 (Mar. 31, 2016) (Second Final Rule)). The presumption of regularity is thus rebutted and should not help the Government at this stage.

Moreover, even when the presumption does apply, a court must still make "a thorough, probing, in-depth review" of agency action, with an "inquiry into the facts" that is "searching and careful." *Citizens To Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415–16 (1971). Courts thus routinely decline to countenance an agency's conclusory and unsupported statement that it complied with a statutory factor. *E.g.*, *Getty v. FSLIC*, 805 F.2d 1050, 1055 (D.C. Cir. 1986) ("Stating that a factor was considered, however, is not a substitute for considering it. We must make a 'searching and careful' inquiry to determine if [the agency] actually *did* consider it."). In particular, courts have repeatedly held agency actions to be unlawful for failing to

comply with a statutory consultation requirement—even when the agency claimed (while invoking the presumption of regularity) that it undertook the requisite consultations. *E.g.*, *California Wilderness Coalition*, 631 F.3d at 1085 (holding agency action unlawful for failure to consult after explaining that a court's role in evaluating a consultation challenge is to "review [the agency's] efforts . . . and then evaluate whether those efforts amount, as [the agency] contends, to consultation"); *Campanale*, 311 F.3d at 116–21 & n.14 (holding agency action unlawful for failure to consult after rejecting the agency's "self-serving conclusion" that "it has engaged in consultation" because such a conclusion "cannot be the end of judicial inquiry if a party properly makes a challenge"). Accordingly, the presumption of regularity—even assuming it were not rebutted in this case—would not permit this Court to overlook the fatal inadequacies in the May Declaration identified above in Sections II & III.

Finally, it must be noted that FinCEN's submission of the Second May Declaration is now anything but regular. It follows not only the voluntary remand but *also*: FinCEN's submission of an opening brief from which it omitted any mention of consultations on remand; FinCEN's submission of an opposition brief from which it omitted any affirmative claim of remand consultation (instead citing to our brief, which cited FinCEN's reference to pre-July 2014 consultation); a live hearing in which FinCEN cited to a portion of the administrative record referring only to pre-July 2014 consultation; and a full week that FinCEN took to file a declaration that ultimately omitted any reference to the consultation "details" on which this Court has put a sharp point. The presumption of regularity is a tool of judicial review, not a disabler of it, and the presumption supplies no answer to the real questions now before this Court about whether statutorily-required consultations actually occurred.

## V. MR. MAY SHOULD BE DEPOSED OR HIS DECLARATION STRUCK

When Mr. May previously submitted a conclusory three-paragraph declaration after the administrative record had been certified, FBME moved to depose Mr. May or have his declaration struck. *See* ECF 72, 76. Now that Mr. May has submitted a second conclusory three-paragraph declaration, the same points apply again with no less force, so FBME respectfully incorporates by reference its prior submissions: For the reasons previously stated, the Court should afford FBME the opportunity to examine Mr. May or else strike the Second May Declaration. *See Saxon Corp. v. U.S. Air Force*, 1987 WL 8531, at *2–3 (D.D.C. Mar. 5, 1987) (ordering deposition of agency official who submitted a declaration claiming for the first time that the agency had considered a statutory factor not mentioned in the administrative record); *Judicial Watch, Inc. v. U.S. Department of Commerce*, 224 F.R.D. 261, 264 (D.D.C. 2004) (collecting cases striking conclusory declarations).

## CONCLUSION

For the foregoing reasons, FBME respectfully requests that the Court vacate the Second Final Rule for failure to comply with the statutory consultation requirements. In addition, FBME respectfully requests leave to depose Richard May or, in the alternative, that the Second May Declaration be struck.

Dated: June 13, 2016

Respectfully submitted,

QUINN EMANUEL URQUHART &
SULLIVAN LLP

*/s/ Derek L. Shaffer*
Derek L. Shaffer (D.C. Bar No. 478775)
William A. Burck (D.C. Bar No. 979677)
Lauren H. Dickie (IL Bar No. 6286037)
Jonathan G. Cooper (D.C. Bar No. 999764)
777 Sixth Street NW, 11th Floor
Washington, DC 20001
(202) 538-8000

HOGAN LOVELLS US LLP

*/s/ Peter S. Spivack*
Peter S. Spivack (D.C. Bar No. 453731)
J. Evans Rice III (D.C. Bar No. 481768)
555 Thirteenth Street NW
Washington, DC 20004
(202) 637-5600

*Attorneys for Plaintiffs*
*FBME Bank Ltd. and FBME Ltd.*