**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| FBME, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 15-1270 |
| Jacob LEW, in his capacity as SECRETARY | ) | |
| OF THE TREASURY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

# DEFENDANTS' SUPPLEMENTAL REPLY MEMORANDUM REGARDING CONSULTATIONS


BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

CHANNING D. PHILLIPS
United States Attorney

JOSEPH H. HUNT
Director

DIANE KELLEHER
Assistant Branch Director

LYNN Y. LEE (CA Bar No. 235531)
AMY E. POWELL
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20530
Telephone: (202) 305-0531
Fax: (202) 616-8470
Email: lynn.lee@usdoj.gov

*Attorneys for Defendants*

## PRELIMINARY STATEMENT

FinCEN fully complied with Section 311's consultation requirements in promulgation of the March 2016 Final Rule. The Second Declaration of Richard May states clearly that the agency engaged in the required consultations, including a new round of inter-agency consultations prior to promulgation of the March 2016 final rule. As explained in Part I, the Court should consider FinCEN's declaration as evidence of these consultations, notwithstanding Plaintiffs' arguments to the contrary. And, as explained in Part II, this evidence conclusively demonstrates that FinCEN satisfied Section 311's requirements. This record leaves Plaintiffs only with complaints not about *whether* FinCEN consulted but *how* FinCEN did so. Plaintiffs' objections are unavailing, as explained in Part III, amounting to little more than an attempt to micromanage FinCEN's inter-agency communications.

## ARGUMENT

### I. FinCEN Properly Submitted a Declaration Verifying It Satisfied Section 311's Consultation Requirements.

As a preliminary matter, because Section 311's consultation requirements are designed to assess effects on the government's national security, diplomacy, and domestic and international finance interests, the consultation requirements are not enforceable through Plaintiffs' lawsuit.[1] *See* Defs.' Summ. J. Opp'n (ECF No. 73) at 39 (*citing Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883 (1990) (to be "adversely affected or aggrieved . . . within the meaning of a statute, the plaintiff must establish that the injury he complains of (*his* aggrievement, or the adverse effect *upon him*) falls within the 'zone of interests' sought to be protected *by the statutory provision whose violation forms the legal basis* for his complaint" (emphasis added))).[2]

[1] Moreover, Plaintiffs waived any complaints about the sufficiency of the agency's explanation of its inter-agency consultations by not objecting during preliminary injunction briefing or during the remand to the agency's prior assertion of compliance with those requirements. Defs.' Summ. J. Opp'n at 38.

[2] At oral argument, Plaintiffs cited *Clarke v. Securities Industry Association*, 479 U.S. 388 (1987), and *Grocery Manufacturers Association v. EPA*, 693 F.3d 169 (D.C. Cir. 2012), in support of their contrary view that the Court should look to the purpose of the entire statute rather than a specific statutory provision

Nevertheless, in light of a possible ambiguity in FinCEN's assertion in the March 2016 Final Rule that it engaged in the required consultations, 81 Fed. Reg. at 18,488, and the Court's inquiries as to whether this meant FinCEN engaged in a new set of consultations during the remand, Summ. J. Hr'g Tr. at 63:11-15, FinCEN submitted a declaration providing further background on the agency's consultations. ECF No. 79-1 ("Second May Decl."). The declaration asserts that FinCEN complied with all statutory consultation requirements at every step of the decisionmaking process. Second May Decl. ¶ 2. It explains that the statutorily-required agencies were consulted at each step of the process: before issuing the notice of finding and notice of proposed rulemaking, before issuing the July 2015 Final Rule, and again before issuing the March 2016 Final Rule. *Id.* And it explains that FinCEN sought the views and recommendations of the consulted agencies. *Id.*

Plaintiffs correctly note that an agency must justify its decision at the time it is made, and that courts refuse to consider *post hoc* "litigation affidavits" providing additional or alternative bases for agency action. *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 410 U.S. 402, 419 (1971). But Plaintiffs are incorrect to suggest that this rule applies to the Court's determination whether the agency engaged in the statutorily required procedures here. Pls.' Opp'n at 2-3 (ECF No. 80). As we have explained elsewhere, courts routinely consider background declarations providing additional details about the administrative process itself such as the declaration here. *See* Defs.' Opp'n to

---

to determine whether a plaintiff falls within the requisite zone of interests. However, in *Bennett v Spear*, which post-dates *Clarke*, the Supreme Court affirmed that "whether a plaintiff's interest is arguably protected by the statute within the meaning of the zone-of-interests test is to be determined not by reference to the overall purpose of the Act in question…but by reference to the *particular provision* of law upon which the plaintiff relies." 520 U.S. 154, 175-76 (1997) (emphasis added). *See also Myersville Citizens for a Rural Comm'y v. FERC*, 783 F.3d 1301, 1316 (D.C. Cir. 2015) (looking only to particular provisions of the Natural Gas Act and Clean Air Act on which plaintiff relied to evaluate statutory standing). Thus, even assuming that Plaintiffs have established some injury from the means of consultation, *but see Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Kerry*, No. CV 15-300 (GK), 2016 WL 927142, at *24 (D.D.C. Mar. 7, 2016) (no Article III standing to challenge consultation requirements), prudential standing doctrine further requires that the particular injury suffered fall within the zone of interests of the consultation requirements to be enforceable in a lawsuit brought by Plaintiffs.

Mot. to Strike or Depose at 3-4 (ECF No. 75).[3] Such declarations do not offer anything "new" or "post hoc" but simply describe the administrative process as it happened.

**II. The Second May Declaration Demonstrates that FinCEN Satisfied Section 311's Consultation Requirements.**

Section 311 contains three distinct consultation requirements. First, in making a finding of primary money laundering concern, "the Secretary shall consult with the Secretary of State and the Attorney General." 31 U.S.C. § 5318A(c)(1). Second, in selecting which special measure to impose, the Secretary "shall consult with the Chairman of the Board of Governors of the Federal Reserve System, any other appropriate Federal banking agency (as defined in section 3 of the Federal Deposit Insurance Act)[,] the Secretary of State, the Securities and Exchange Commission, the Commodity Futures Trading Commission, the National Credit Union Administration Board, and in the sole discretion of the Secretary, such other agencies and interested parties as the Secretary may find appropriate." *Id.* § 5318A(a)(4)(A). Third, in imposing the fifth special measure, the Secretary must do so "in consultation with the Secretary of State, the Attorney General, and the Chairman of the Board of Governors of the Federal Reserve System." *Id.* § 5318A(b)(5).

The Second May declaration demonstrates that FinCEN satisfied each requirement. As described above, it states that FinCEN provided "drafts and information" for the "purpose of obtaining views and recommendations" to representatives of the Secretary of State, the Attorney General, the Chairman of the Board of Governors, Securities and Exchange Commission, the Commodity Futures Trading Commission, the National Credit Union Administration Board, the Federal Deposit Insurance Company ("FDIC"), and the Office of the Comptroller of Currency. Furthermore, the declaration provides that FinCEN engaged in such consultations with *all*

[3] Defendants' opposition to Plaintiffs' motion to strike the First Declaration of Richard May or depose also addresses Plaintiffs' argument in the alternative that the Court should not only consider Mr. May's declaration but permit them to depose him. *See* ECF No. 75.

of these agencies for each aspect of its decision—in finding that FBME is of primary money laundering concern, in deciding which special measure to impose, and in imposing the fifth special measure—which is actually *more* than is required by the statute. Second May Decl. ¶ 3. It further establishes that FinCEN engaged in new consultations with these agencies following the remand order. *Id.*

FinCEN's actions unambiguously amount to "consultation" within the meaning of Section 311. "The dictionary defines 'to consult' as 'to seek the opinion or advice of another.'" *Nat'l Ass'n of Postal Supervisors v. U.S. Postal Serv.*, 602 F.2d 420, 438 (D.C. Cir. 1979) (quoting Webster's New International Dictionary 573 (2d ed. 1959)); *see also Campanale & Sons, Inc. v. Evans,* 311 F.3d 109, 117-19 (1st Cir. 2002) ("consult" means "the act of asking the advice or opinion of someone" (internal quotations omitted)); *Cal. Wilderness Coalition v. U.S. Dep't of Energy*, 631 F.3d 1072, 1087 (9th Cir. 2011) ("ordinary meaning" of "consult" is to "seek information or advice" (internal quotations omitted)). Sharing drafts and information with agency representatives for the purpose of obtaining views and recommendations relevant to the decision-making process, as FinCEN did, plainly entails "seek[ing] the opinion or advice" of the agency. *Id.* The Court need go no further in its analysis to determine that FinCEN discharged its consultation obligations.

## III. Plaintiffs' Objections to the Manner In Which FinCEN Conducted the Required Inter-Agency Consultations Are Unavailing.

Plaintiffs' opposition brief offers two objections to the manner in which FinCEN consulted with other agencies: that FinCEN erred by consulting with representatives of agencies rather than agency heads themselves, and that the Second May declaration does not document those consultations in sufficient detail. *See* Pls.' Opp'n at 3-5. Both arguments fail.

As an initial matter, Plaintiffs' opposition suggests that there is a body of case law addressing "consultation requirements" that dictates how FinCEN must go about

consulting with other agencies under Section 311. *See, e.g.*, Pls.' Opp'n at 7. That is inaccurate. Courts cannot impose procedural requirements beyond those set out by Congress. *See Vt. Yankee Nuclear Power Corp. v. NRDC,* 435 U.S. 519, 543-45 (1978). The cases cited by Plaintiffs do not provide otherwise, do not in fact suggest that "consultation" entails more than its plain meaning and what the agency engaged in here, and in any event have no bearing on the inter-agency consultation provisions of Section 311. *See infra* Part III.B. Further, contrary to Plaintiffs' assumption that the government bears the burden of establishing that its process complied with the statute, Pls.' Opp'n at 7, Plaintiffs bear the burden of overcoming the presumption of regularity in alleging that an agency action was not performed in accordance with statutory procedure. *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14-15 (1926) ("The presumption of regularity supports the official acts of public officers and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties."); *Hercules, Inc. v. EPA*, 598 F.2d 91, 123 (D.C. Cir. 1978) (presumption may be overcome only "upon a strong showing of bad faith or improper behavior.").[4]

A. FinCEN Properly Consulted With Representatives of the Listed Agencies

Plaintiffs first argue that Section 311 requires consultation with the Attorney General, the Secretary of State, and the Chairman of the Board of Governors themselves and that FinCEN's consultations did not satisfy that requirement. *See* Pls.' Opp'n at 3-5.[5]

[4] Plaintiffs argue that the presumption is "rebutted" where the agency arrives at the same result on remand as it did in its original determination, citing a footnote in a D.C. Circuit case listing examples where the presumption may be rebutted. Pls' Opp'n at 8 (citing *NRDC v. SEC*, 606 F.2d 1031, 1049 n.23 (D.C. Cir. 1979)). However, only one case was cited in which the agency arrived at the same result on remand, in which the court expressed concern that the agency had become so committed to a particular result as to "resist engaging in any genuine reconsideration of the issues." *Food Marketing Institute v. ICC*, 587 F.2d 1285, 1290 (D.C. Cir. 1978). Here, the record makes clear that FinCEN grappled with the new comments and seriously considered alternatives to special measure five. The agency considered new information and undertook a fresh analysis of the relevant evidence. Moreover, the D.C. Circuit has applied the presumption of regularity even when an agency reached the same decision on remand. *See, e.g.*, *Shieldalloy Metallurgical Corp. v. Nuclear Regulatory Comm'n*, 707 F.3d 371, 387 (D.C. Cir. 2013) (citing *Overton Park*, 401 U.S. at 415).

[5] This argument goes against common sense and generally accepted practice. By way of comparison, the Endangered Species Act requires federal agencies to take certain actions "in consultation with and with the assistance of the Secretary [of the Interior]," "consult with the Secretary on any prospective agency action," and "confer with the Secretary on any agency action which is likely to jeopardize the continued existence

But Mr. May's second declaration asserts, based on his personal knowledge, that the consulted individuals were "representatives" of their respective agency heads. Second May Decl. ¶ 3. That assertion is consistent with FinCEN's prior Federal Register statement (to which Plaintiffs did not raise a timely objection) that "[i]n connection with this action, FinCEN consulted with representatives of the Federal functional regulators, the Department of Justice, and the Department of State, among others." NPRM, 79 Fed. Reg. 42486, 42487 (July 22, 2014); *see also infra* (listing other discussions of consultations in Federal Register notices). Plaintiffs have presented no evidence to suggest that the agency officials who FinCEN understood to represent their respective agency heads in this public rulemaking were acting improperly or out of turn. And their speculative argument that the representatives with which FinCEN consulted were acting without the approval of their principals goes to the heart of the presumption of regularity. *See Latif v. Obama*, 677 F.3d 1175, 1178 (D.C. Cir. 2012); *see also Muwekma Ohlone Tribe v. Salazar*, 708 F.3d 209, 221 (D.C. Cir. 2013) (*citing Friends of the Earth, Inc. v. EPA*, 446 F.3d 140, 148 (D.C. Cir. 2006); *La. Ass'n of Indep. Producers & Royalty Owners v. FERC*, 958 F.2d 1101, 1111 (D.C. Cir. 1992) (per curiam)). Plaintiffs bear a heavy burden in overcoming this presumption, and they have offered no evidence whatsoever to rebut it.

This leaves Plaintiffs to argue that Section 311 forbids consultation with representatives of the listed entities, *i.e.*, that the statute actually requires the Secretary of State, Attorney General, and Chairman of the Board of Governors to participate in consultations *personally*. That argument is contrary to the general rule that "[w]hen a statute delegates authority to a federal officer or agency, sub-delegation to a subordinate federal officer or agency is presumptively permissible absent affirmative evidence of a

---

of any [endangered] species," 16 U.S.C. § 1536(a)(1)-(4). Courts uniformly interpret these provisions to require consultation with department staff or designated agencies, not with the Secretary himself. *See, e.g., Nat'l Assn. of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 649 (2007); *Sierra Club v. U.S. Army Corps of Eng'rs*, 803 F.3d 31, 35 (D.C. Cir. 2015).

contrary congressional intent."[6] *U.S. Telecom Ass'n. v. FCC*, 359 F.3d 554, 565 (D.C. Cir. 2004). And it is also contrary to Section 311 itself. If anything, Section 311's references to "any other appropriate Federal banking agency" and "such other agencies and interested parties" directly after listing specific agency heads underscore that Congress intended the named officials to act through the agencies they head. Specifically, 31 U.S.C. § 5318A(a)(4)(A) requires consultation with "the *Chairman* of the Board of Governors of the Federal Reserve System, any *other* appropriate *Federal banking agency*," etc.; that juxtaposition makes clear that Congress in Section 311 understood the "Chairman of the Board of Governors" to refer to an "appropriate Federal banking agency" (emphasis added).[7]

Plaintiffs also argue that a different statutory provision requires FinCEN to specifically identify the representative of the Chairman of the Board of Governors with which FinCEN consulted and document a "published order or rule" delegating Section 311 consultation responsibilities to that representative. Pls.' Opp'n at 5 (citing 12 U.S.C. § 248(k)). But that statute is inapplicable. It "authorize[s] and empower[s]" the Board of Governors to delegate certain functions by rule, but FinCEN's consultation with the Chairman pursuant to Section 311 is not a statutorily-prescribed "function" of the Board. And, again, Plaintiffs' argument wrongfully *presumes* that the representatives

---

[6] Plaintiffs cite two cases as purportedly providing to the contrary, *United States v. Giordano*, 416 U.S. 505 (1974) (executive assistant to the Attorney General could not authorize applications for wiretapping orders because he was not empowered to do so by statute), and *Halverson v. Slater*, 129 F.3d 180 (D.C. Cir. 1997) (Secretary of Transportation could not delegate his responsibilities under the Great Lakes Pilotage Act to a non-Coast Guard official). Both cases involved specific statutory provisions governing delegation found to rebut the general presumption discussed above, and have been distinguished accordingly by other courts reviewing delegation questions. *See, e.g., United States v. Mango*, 199 F.3d 85, 90 (2d Cir. 1999) (finding both *Giordano* and *Halverson* irrelevant to delegation question because statute at issue did not mention delegation and the officers had not attempted to delegate their authority to parties outside their agencies). *Cf. Kobach v. U.S. Election Assistance Comm'n*, 772 F.3d 1183, 1190 (10th Cir. 2014) ("Our sibling circuits that have spoken on this issue are unanimous in permitting subdelegations to subordinates, even where the enabling statute is silent, so long as the enabling statute and its legislative history do not indicate a prohibition on subdelegation.").

[7] Plaintiffs attempt to find meaning in the fact that in three instances section 311 mentions "officials" by title, but (in Plaintiffs' view) in all other instances refers to "agencies" instead. Pls.' Opp'n at 3. Plaintiffs' argument ignores and is vitiated by the fact that the entities listed by "agency" rather than "official" in section 311 are in fact multi-member boards or commissions that have no single "agency head."

of the Chairman of the Board of Governors that FinCEN consulted were *not* following their agency's procedures, whereas the presumption of regularity requires the Court to presume the opposite.

Finally, if there were any doubt that Section 311 permits consultation with *representatives* of the entities listed in the statute (which there is not), the Court should defer to FinCEN's interpretation that its consultations complied with the statutory requirements, *see Chevron U.S.A. v. NRDC*, 467 U.S. 837, 842-43 (1984); NPRM, 79 Fed. Reg. 42486 (describing consultation with "representatives"), First Final Rule, 80 Fed. Reg. 45057, 45060 (noting that FinCEN had completed "the required consultations"); Second Final Rule, 81 Fed. Reg. 18480, 18488 (same), and its broad discretion in carrying out its statutory responsibilities, *see Nine Iraqi Allies*, 2016 WL 927142, at *24 ("Plaintiffs fail to point to any standards by which the Court may assess . . . whether the Secretary has adequately acted 'in consultation with the heads of other relevant Federal agencies'" (quoting 8 U.S.C. § 1245(e)).

B. The Second May Declaration meets the standards for specificity applied in *California Wilderness Coalition* and *Campanale.*

Finally, Plaintiffs complain that Mr. May's declaration lacks "specifics" that they insist are required by the case law governing "consultation requirements." In particular, Plaintiffs assert that *Campanale* and *California Wilderness* require such "specifics" from an agency about its consultations, on pain of vacatur. Pls.' Opp'n at 6-7. Those cases, however, held nothing of the kind and, are inapposite.

Both *Campanale* and *California Wilderness* involved statutory provisions requiring the agencies at issue in those cases (the National Marine Fisheries Service and Secretary of Energy, respectively) to "consult" with particular entities representing regional interests (fishery councils and affected states, respectively), regarding agency action that would affect those regional interests. *Campanale*, 311 F.3d at 111; *Cal. Wilderness*, 631 F.3d at 1085. In both cases, the statute separately required the agency to

seek notice and public comment on the same agency action, and the agency argued that its compliance with the APA's notice and comment requirements (and the regional entities' ability to submit comments therein) itself satisfied the distinct statutory consultation requirements (without any separate consultation). *Campanale*, 311 F.3d at 119; *Cal. Wildnerness*, 631 F.3d at 1086. And in both cases the Court held that "consultation" in the statute required more than participation in the notice and comment period and must take place before issuing a proposed decision. *Campanale*, 311 F.3d at 118-19; *Cal. Wilderness*, 631 F.3d at 1087; *but see City of S. Pasadena v. Slater*, 56 F. Supp. 2d 1106, 1141 (C.D. Cal. 1999) (inter-agency "consultation" requirement satisfied where appropriate agencies were given copy of *final* report and opportunity to comment).

The consultations here would easily satisfy the standards articulated in *Campanale* and *California Wilderness*. Mr. May's second declaration demonstrates that the agencies with which FinCEN consulted were afforded significantly more than simply participation in the notice and comment process. Those agencies were consulted *before* completion of the Second Final Rule (and at several other stages) and were provided with *drafts* for their input. Second May Decl. ¶¶ 2-3.

Moreover, *Campanale* and *California Wilderness* only illustrate—by contrast—the considerations that counsel against documentation of the specifics of the inter-agency consultations required by Section 311. The consultations in those cases were with state or regional entities, not inter-agency deliberations subject to the deliberative process privilege. Furthermore, Section 311's consultation requirements ensure the Secretary has access to information regarding the diplomatic, law enforcement, and international and domestic financial implications of an action. Unlike in *Campanale* and *California Wilderness*, documentation beyond a demonstration of compliance with the consultation requirements would potentially undermine the information- and recommendation- sharing purposes of Section 311's consultation provisions.

Thus, Plaintiffs' complaint that Mr. May's declaration does not document in greater detail the "*who*[,] . . . the *when*, the *what*, and the *how*" of the inter-agency consultations by offering a laundry list of "specifics" misunderstands the nature of the consultations. Pls.' Opp'n at 5-6. Even assuming that Plaintiffs have not waived the argument that they are entitled to more information beyond the fact that FinCEN conducted the required consultations, Plaintiffs provide no authority or reason why any of this information is necessary where the only facts relevant to Section 311's consultation requirements have been clearly set forth in Mr. May's second declaration: namely, that FinCEN consulted the agencies identified in the statute, providing them drafts and information for review and comment, at every step of the public rulemaking process—including the remand and the March 2016 Final Rule. Furthermore, disclosure of the details of the deliberative process here would undermine the confidentiality of that process, potentially implicating sensitive agency perspectives on matters of diplomacy, law enforcement, national security, and finance. Mr. May's Second Declaration appropriately balances the agency's interest in protecting the integrity of its deliberative process with the need to address the Court's inquiries regarding whether the agency engaged in an additional set of consultations before issuing the March 2016 Final Rule, and the declaration establishes that it did so.

## CONCLUSION

For the foregoing reasons, the Court should accept the Second Declaration of Richard May as affirmation that FinCEN fully satisfied the inter-agency consultation requirements of Section 311.

Dated: June 22, 2016

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney Gene

CHANNING D. PHILLIPS
United States Attorney

JOSEPH H. HUNT
Director

DIANE KELLEHER
Assistant Branch Director

*/s/ Lynn Y. Lee*
LYNN Y. LEE (CA Bar No. 235531)
AMY E. POWELL
MATTHEW J. LAWRENCE
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20530
Telephone: (202) 305-0531
Fax: (202) 616-8470
Email: lynn.lee@usdoj.gov

*Attorneys for Defendants*