APPEAL,CLOSED,STAYED,TYPE−D

# U.S. District Court
# District of Columbia (Washington, DC)
# CIVIL DOCKET FOR CASE #: 1:15−cv−01270−CRC

FBME BANK LTD. et al v. LEW et al
Assigned to: Judge Christopher R. Cooper
Case: 1:15−cv−01641−JEB
Case in other court: 17−05076
Cause: 05:702 Administrative Procedure Act

Date Filed: 08/07/2015
Date Terminated: 04/14/2017
Jury Demand: None
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**FBME BANK LTD.**

represented by **Jonathan Gordon Cooper**
QUINN EMANUEL URQUHART & SULLIVAN LLP
777 6th Street, NW
11th Floor
Washington, DC 20001
(202) 538−8146
Fax: (202) 616−8470
Email: jonathancooper@quinnemanuel.com
*ATTORNEY TO BE NOTICED*

**William A. Burck**
QUINN EMANUEL URQUHART & SULLIVAN LLP
777 6th Street, NW
11th Floor
Washington, DC 20001
(202) 538−8000
Email: williamburck@quinnemanuel.com
*ATTORNEY TO BE NOTICED*

**Derek Lawrence Shaffer**
QUINN EMANUEL URQUHART & SULLIVAN, LLP
777 6th Street, NW
Suite 1100
Washington, DC 20001
(202) 538−8123
Fax: (202) 538−8100
Email: derekshaffer@quinnemanuel.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**FBME LTD.**

represented by **Jonathan Gordon Cooper**
(See above for address)
*ATTORNEY TO BE NOTICED*

**William A. Burck**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Derek Lawrence Shaffer**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**JACOB J. LEW**
*in his official capacity as Secretary of the Treasury*

represented by **Lynn Yuhee Lee**
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
(202) 305−0531
Fax: (202) 616−8470
Email: lynn.lee@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amy E. Powell**
U.S. DEPARTMENT OF JUSTICE
P.O. Box 883
Washington, DC 20044
(202) 514−9836
Fax: (202) 616−8517
Email: amy.powell@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**DEPARTMENT OF TREASURY**

represented by **Lynn Yuhee Lee**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amy E. Powell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**JENNIFER SHASKY CALVERY**
*in his official capacity as Director of the Financial Crimes Enforcement Network*

represented by **Lynn Yuhee Lee**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amy E. Powell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **FINANCIAL CRIMES ENFORCEMENT NETWORK** | represented by | **Lynn Yuhee Lee**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**Amy E. Powell**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 08/07/2015 | 1 | | COMPLAINT against All Defendants ( Filing fee $ 400 receipt number 0090−4202628) filed by FBME LTD., FBME BANK LTD.. (Attachments: # 1 Civil Cover Sheet, # 2 Summons, # 3 Summons, # 4 Summons, # 5 Summons, # 6 Summons, # 7 Summons)(Shaffer, Derek) (Entered: 08/07/2015) |
| 08/07/2015 | 2 | | Corporate Disclosure Statement by FBME BANK LTD., FBME LTD.. (Shaffer, Derek) (Entered: 08/07/2015) |
| 08/07/2015 | 3 | | MOTION for Preliminary Injunction by FBME Bank LTD., FBME LTD. (Attachments: # 1 Memorandum in Support, # 2 Declaration, # 3 Declaration, # 4 Declaration, # 5 Declaration, # 6 Text of Proposed Order)(Shaffer, Derek) (Entered: 08/07/2015) |
| 08/07/2015 | | | Case Assigned to Judge Christopher R. Cooper. (rd) (Entered: 08/07/2015) |
| 08/07/2015 | 4 | | SUMMONS (6) Issued Electronically as to JENNIFER SHASKY CALVERY, DEPARTMENT OF TREASURY, FINANCIAL CRIMES ENFORCEMENT NETWORK, JACOB J. LEW, U.S. Attorney and U.S. Attorney General (Attachments: # 1 Consent Form, # 2 Notice of Consent)(rd) (Entered: 08/07/2015) |
| 08/07/2015 | 5 | | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by FBME Bank LTD., FBME LTD. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Text of Proposed Order, # 2 Declaration)(Shaffer, Derek) (Entered: 08/07/2015) |
| 08/10/2015 | 6 | | NOTICE of Appearance by Lynn Yuhee Lee on behalf of JENNIFER SHASKY CALVERY, DEPARTMENT OF TREASURY, FINANCIAL CRIMES ENFORCEMENT NETWORK, JACOB J. LEW (Lee, Lynn) (Entered: 08/10/2015) |
| 08/11/2015 | | | MINUTE ORDER: In light of the August 28, 2015 effective date of the final rule, the parties are directed to meet and confer as to whether expedited briefing on Plaintiff's motion for a preliminary injunction is necessary and, if so, to file as soon as practicable a joint proposed briefing and hearing schedule, or separate schedules if mutual agreement cannot be reached. The parties are advised that the Court will be unavailable for a hearing until Monday, August 24, 2015. The parties should contact Courtroom Deputy Terri Robinson at (202) 354−3179 for available dates and times thereafter. Signed by Judge Christopher R. Cooper on 8/11/2015. (lccrc1, ) (Entered: 08/11/2015) |

| | | | |
|---|---|---|---|
| 08/11/2015 | | | SEALED MINUTE ORDER granting re 5 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by FBME Bank LTD., FBME LTD(This document is SEALED and only available to authorized persons.)Signed by Judge Christopher R. Cooper on 8/11/2015.(ztcr) Modified event title on 8/12/2015 (znmw). (Entered: 08/11/2015) |
| 08/11/2015 | 7 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upon United States Attorney General 08/11/2015. (Shaffer, Derek) (Entered: 08/11/2015) |
| 08/11/2015 | 8 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. JACOB J. LEW served on 8/11/2015 (Shaffer, Derek) (Entered: 08/11/2015) |
| 08/11/2015 | 9 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. FINANCIAL CRIMES ENFORCEMENT NETWORK served on 8/8/2015 (Shaffer, Derek) (Entered: 08/11/2015) |
| 08/11/2015 | 10 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. DEPARTMENT OF TREASURY served on 8/11/2015 (Shaffer, Derek) (Entered: 08/11/2015) |
| 08/11/2015 | 11 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 8/11/2015. Answer due for ALL FEDERAL DEFENDANTS by 10/10/2015. (Shaffer, Derek) (Entered: 08/11/2015) |
| 08/11/2015 | 12 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. JENNIFER SHASKY CALVERY served on 8/8/2015 (Shaffer, Derek) (Entered: 08/11/2015) |
| 08/11/2015 | | | MINUTE ORDER: In light of the parties joint request, it is hereby ORDERED that the Preliminary Injunction Hearing will be set for Tuesday, August 25, 2015 at 10:30 AM in Courtroom 27A before Judge Christopher R. Cooper. Signed by Judge Christopher R. Cooper on 8/11/2015. (tcr) (Entered: 08/11/2015) |
| 08/11/2015 | 13 | | SEALED DOCUMENT (Exhibits) filed by FBME Bank LTD., FBME LTD.. re 3 MOTION for Preliminary Injunction filed by FBME Bank LTD., FBME LTD.. (This document is SEALED and only available to authorized persons.)(ztd) (Entered: 08/11/2015) |
| 08/11/2015 | 14 | | STATUS REPORT *Containing Joint Proposed Briefing and Hearing Schedule for Plaintiffs' Motion for a Preliminary Injunction* by FBME Bank LTD., FBME LTD.. (Shaffer, Derek) (Entered: 08/11/2015) |
| 08/11/2015 | | | MINUTE ORDER: In light of the Joint Proposed Schedule for Plaintiffs' Motion for a Preliminary Injunction filed on 8/11/2015, it is hereby ORDERED that Defendants shall file their opposition to the motion by August 18, 2015, and Plaintiffs shall file their reply in support of the motion by August 21, 2015. Signed by Judge Christopher R. Cooper on 8/11/15. (lccrc1, ) (Entered: 08/11/2015) |
| 08/18/2015 | 15 | | NOTICE of Appearance by Amy E. Powell on behalf of All Defendants (Powell, Amy) (Entered: 08/18/2015) |
| 08/18/2015 | 16 | | |

| | | | |
|---|---|---|---|
| | | | NOTICE *of Lodging of Classified Submission* by JENNIFER SHASKY CALVERY, DEPARTMENT OF TREASURY, FINANCIAL CRIMES ENFORCEMENT NETWORK, JACOB J. LEW (Lee, Lynn) (Entered: 08/18/2015) |
| 08/18/2015 | 17 | | MOTION for Leave to File Excess Pages *in Defendants' Opposition to Motion for Preliminary Injunction* by JENNIFER SHASKY CALVERY, DEPARTMENT OF TREASURY, FINANCIAL CRIMES ENFORCEMENT NETWORK, JACOB J. LEW (Attachments: # 1 Text of Proposed Order)(Lee, Lynn) (Entered: 08/18/2015) |
| 08/18/2015 | 18 | | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by JENNIFER SHASKY CALVERY, DEPARTMENT OF TREASURY, FINANCIAL CRIMES ENFORCEMENT NETWORK, JACOB J. LEW (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Memorandum in Support of Final Rule (redacted), # 2 Exhibit 24 to Final Rule Memo, # 3 Exhibit 25 to Final Rule Memo, # 4 Exhibit 26 to Final Rule Memo (Redacted Memo for Finding of Fact), # 5 Exhibit 45 to Memo for Finding of Fact)(Lee, Lynn) (Entered: 08/18/2015) |
| 08/18/2015 | 19 | | Memorandum in opposition to re 3 MOTION for Preliminary Injunction filed by JENNIFER SHASKY CALVERY, DEPARTMENT OF TREASURY, FINANCIAL CRIMES ENFORCEMENT NETWORK, JACOB J. LEW. (Attachments: # 1 Exhibit 1)(Lee, Lynn) (Entered: 08/18/2015) |
| 08/18/2015 | 20 | | AFFIDAVIT re 19 Memorandum in Opposition *Declaration of Jennifer Shasky Calvery* by JENNIFER SHASKY CALVERY, DEPARTMENT OF TREASURY, FINANCIAL CRIMES ENFORCEMENT NETWORK, JACOB J. LEW. (Attachments: # 1 Exhibit)(Lee, Lynn) (Entered: 08/19/2015) |
| 08/19/2015 | 21 | | AFFIDAVIT re 19 Memorandum in Opposition *Declaration of Stephanie Brooker* by JENNIFER SHASKY CALVERY, DEPARTMENT OF TREASURY, FINANCIAL CRIMES ENFORCEMENT NETWORK, JACOB J. LEW. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Lee, Lynn) (Entered: 08/19/2015) |
| 08/19/2015 | | | MINUTE ORDER: It is hereby ORDERED that 18 Defendants' Sealed Motion to File Document Under Seal is GRANTED.(This document is SEALED and only available to authorized persons.)Signed by Judge Christopher R. Cooper on 8/19/2015.(ztcr) (Entered: 08/19/2015) |
| 08/19/2015 | 22 | | SEALED DOCUMENT filed by JENNIFER SHASKY CALVERY, DEPARTMENT OF TREASURY, FINANCIAL CRIMES ENFORCEMENT NETWORK, JACOB J. LEW. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Part 2 of 5, # 2 Part 3 of 5, # 3 Part 4 of 5, # 4 Part 5 of 5)(ztd) (Entered: 08/19/2015) |
| 08/19/2015 | 23 | | NOTICE *of Errata* by JENNIFER SHASKY CALVERY, DEPARTMENT OF TREASURY, FINANCIAL CRIMES ENFORCEMENT NETWORK, JACOB J. LEW re 19 Memorandum in Opposition (Attachments: # 1 Memorandum in Support of Opposition to Preliminary Injunction − CORRECTED)(Lee, Lynn) (Entered: 08/19/2015) |
| 08/21/2015 | 24 | | MOTION for Leave to File Excess Pages by FBME BANK LTD., FBME LTD. (Attachments: # 1 Text of Proposed Order)(Shaffer, Derek) (Entered: |

| | | | |
|---|---|---|---|
| | | | 08/21/2015) |
| 08/21/2015 | | | MINUTE ORDER: It is hereby ORDERED that 24 Plaintiffs' Motion for Leave to File Excess Pages is GRANTED. Plaintiffs may file a reply brief of up to thirty (30) pages. Signed by Judge Christopher R. Cooper on 08/21/2015. (lccrc3, ) (Entered: 08/21/2015) |
| 08/21/2015 | | | MINUTE ORDER: It is hereby ORDERED that 17 Defendants' Motion for Leave to File Excess Pages is GRANTED. Signed by Judge Christopher R. Cooper on 08/21/2015. (lccrc3, ) (Entered: 08/21/2015) |
| 08/21/2015 | 25 | | REPLY to opposition to motion re 3 MOTION for Preliminary Injunction filed by FBME BANK LTD., FBME LTD.. (Attachments: # 1 Exhibit)(Shaffer, Derek) (Entered: 08/21/2015) |
| 08/25/2015 | | | Minute Entry for proceedings held before Judge Christopher R. Cooper: Preliminary Injunction held and concluded on 8/25/2015. Argument heard and this matter has been taken under advisement. (Court Reporter Lisa Moreira) (tcr) (Entered: 08/25/2015) |
| 08/26/2015 | 26 | | TRANSCRIPT OF PRELIMINARY INJUNCTION HEARING before Judge Christopher R. Cooper held on August 25. 2015; Page Numbers: 1−128. Date of Issuance:August 26, 2015. Court Reporter/Transcriber Lisa A. Moreira, RDR, CRR, Telephone number 202−354−3187, Court Reporter Email Address : Lisa_Moreira@dcd.uscourts.gov.<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 9/16/2015. Redacted Transcript Deadline set for 9/26/2015. Release of Transcript Restriction set for 11/24/2015.(Moreira, Lisa) (Entered: 08/26/2015) |
| 08/26/2015 | 27 | | NOTICE *of Filing of Supplemental Declaration* by FBME BANK LTD., FBME LTD. re 3 MOTION for Preliminary Injunction (Attachments: # 1 Declaration)(Shaffer, Derek) (Entered: 08/26/2015) |
| 08/26/2015 | 28 | | NOTICE *of Filing of Supplemental Declaration* by JENNIFER SHASKY CALVERY, DEPARTMENT OF TREASURY, FINANCIAL CRIMES ENFORCEMENT NETWORK, JACOB J. LEW (Attachments: # 1 Declaration Second Declaration of Stephanie Brooker)(Powell, Amy) (Entered: 08/26/2015) |
| 08/26/2015 | 29 | | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by JENNIFER SHASKY CALVERY, DEPARTMENT OF TREASURY, |

| | | | |
|---|---|---|---|
| | | | FINANCIAL CRIMES ENFORCEMENT NETWORK, JACOB J. LEW (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit Under Seal Exhibits to Second Brooker Declaration)(Powell, Amy) (Entered: 08/26/2015) |
| 08/26/2015 | 30 | | NOTICE *of Errata* by JENNIFER SHASKY CALVERY, DEPARTMENT OF TREASURY, FINANCIAL CRIMES ENFORCEMENT NETWORK, JACOB J. LEW re 28 Notice (Other) (Attachments: # 1 Declaration of Stephanie Brooker)(Lee, Lynn) (Entered: 08/26/2015) |
| 08/27/2015 | | | SEALED MINUTE ORDER granting re 29 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL (This document is SEALED and only available to authorized persons.)Signed by Judge Christopher R. Cooper on 8/27/2015.(ztcr) (Entered: 08/27/2015) |
| 08/27/2015 | 31 | | SEALED DOCUMENT (Exhibit A) filed by JENNIFER SHASKY CALVERY, DEPARTMENT OF TREASURY, FINANCIAL CRIMES ENFORCEMENT NETWORK, JACOB J. LEW. re 28 Notice (Other) filed by FINANCIAL CRIMES ENFORCEMENT NETWORK, DEPARTMENT OF TREASURY, JACOB J. LEW, JENNIFER SHASKY CALVERY. (This document is SEALED and only available to authorized persons.)(znmw) (Entered: 08/27/2015) |
| 08/27/2015 | 32 | | ORDER: It is hereby ORDERED that 3 Plaintiffs' Motion for Preliminary Injunction is GRANTED. It is further ORDERED that the final rule entitled Imposition of Special Measure Against FBME Bank Ltd., Formerly Known as the Federal Bank of the Middle East Ltd., as a Financial Institution of Primary Money Laundering Concern, 80 Fed. Reg. 45057 (July 29, 2015), is enjoined from taking effect until the Court enters a final judgment in this case. It is further ORDERED that the parties shall meet and confer as to an expedited briefing schedule on the merits of Plaintiffs' Complaint and to file as soon as practicable a joint proposed briefing schedule, or separate schedules if mutual agreement cannot be reached. Signed by Judge Christopher R. Cooper on 08/27/2015. (lccrc3) (Entered: 08/27/2015) |
| 08/27/2015 | 33 | | MEMORANDUM OPINION re 3 Plaintiffs' Motion for Preliminary Injunction. Signed by Judge Christopher R. Cooper on 08/27/2015. (lccrc3) . (Entered: 08/27/2015) |
| 09/01/2015 | 34 | | NOTICE OF FILING REDACTED DOCUMENT to 13 Sealed Document by FBME BANK LTD., FBME LTD. (The original PDF Document contained privacy information and was restricted pursuant to the E−Government Act.) (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(Shaffer, Derek) (Entered: 09/01/2015) |
| 09/10/2015 | 35 | | Joint STATUS REPORT by FBME BANK LTD., FBME LTD.. (Shaffer, Derek) (Entered: 09/10/2015) |
| 09/17/2015 | 36 | | STATUS REPORT by JENNIFER SHASKY CALVERY, DEPARTMENT OF TREASURY, FINANCIAL CRIMES ENFORCEMENT NETWORK, JACOB J. LEW. (Lee, Lynn) (Entered: 09/17/2015) |
| 09/17/2015 | 37 | | PROPOSED BRIEFING SCHEDULE by FBME BANK LTD., FBME LTD.. (Attachments: # 1 Text of Proposed Order)(Shaffer, Derek) (Entered: 09/17/2015) |

| | | | |
|---|---|---|---|
| 09/18/2015 | | | MINUTE ORDER: Having considered 36 Defendants' September 17, 2015 status report and 37 Plaintiffs' opposition thereto, it is hereby ORDERED that Defendants file a motion for voluntary remand on or before September 28, 2015; that Plaintiffs' opposition shall be due on or before October 5, 2015; and that Defendants' reply shall be due on or before October 13, 2015. The Court will schedule a hearing if deemed necessary after reviewing the briefing. Signed by Judge Christopher R. Cooper on 09/18/2015. (lccrc3) (Entered: 09/18/2015) |
| 09/28/2015 | 38 | | MOTION to Remand to Financial Crimes Enforcement Network by JENNIFER SHASKY CALVERY, DEPARTMENT OF TREASURY, FINANCIAL CRIMES ENFORCEMENT NETWORK, JACOB J. LEW (Attachments: # 1 Text of Proposed Order)(Lee, Lynn) (Entered: 09/28/2015) |
| 10/05/2015 | 39 | | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by FBME BANK LTD., FBME LTD. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit Filed Under Seal, # 2 Exhibit Filed Under Seal, # 3 Exhibit Filed Under Seal, # 4 Exhibit Filed Under Seal, # 5 Exhibit Filed Under Seal, # 6 Text of Proposed Order)(Shaffer, Derek) (Entered: 10/05/2015) |
| 10/05/2015 | 40 | | Memorandum in opposition to re 38 MOTION to Remand to Financial Crimes Enforcement Network filed by FBME BANK LTD., FBME LTD.. (Shaffer, Derek) (Entered: 10/05/2015) |
| 10/05/2015 | 41 | | AFFIDAVIT re 40 Memorandum in Opposition *to Defendants' Motion to Remand* by FBME BANK LTD., FBME LTD.. (Attachments: # 1 Exhibit)(Shaffer, Derek) (Entered: 10/05/2015) |
| 10/05/2015 | 42 | | NOTICE *of Errata* by FBME BANK LTD., FBME LTD. re 41 Affidavit (Attachments: # 1 Affidavit CORRECTED Declaration of Derek L. Shaffer)(Shaffer, Derek) (Entered: 10/05/2015) |
| 10/06/2015 | | | SEALED MINUTE ORDER granting re 39 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by FBME BANK LTD., FBME LTD. (This document is SEALED and only available to authorized persons.) Signed by Judge Christopher R. Cooper on 10/6/2015.(ztcr) (Entered: 10/06/2015) |
| 10/06/2015 | 43 | | SEALED DOCUMENT (Exhibits C−G) filed by FBME BANK LTD., FBME LTD.. re 41 Affidavit filed by FBME LTD., FBME BANK LTD.. (This document is SEALED and only available to authorized persons.)(znmw) (Entered: 10/06/2015) |
| 10/06/2015 | 44 | | Unopposed MOTION for Extension of Time to File Response/Reply *in Support of Motion for Voluntary Remand* by JENNIFER SHASKY CALVERY, DEPARTMENT OF TREASURY, FINANCIAL CRIMES ENFORCEMENT NETWORK, JACOB J. LEW (Attachments: # 1 Text of Proposed Order)(Lee, Lynn) (Entered: 10/06/2015) |
| 10/06/2015 | | | MINUTE ORDER granting 44 Motion for Extension of Time to File Response/Reply: It is hereby ORDERED that Defendants' reply in support of their Motion for Voluntary Remand shall be due on October 16, 2015. Signed by Judge Christopher R. Cooper on 10/6/15. (lccrc1) (Entered: 10/06/2015) |

| | | | |
|---|---|---|---|
| 10/16/2015 | 45 | | REPLY to opposition to motion re 38 MOTION to Remand to Financial Crimes Enforcement Network filed by JENNIFER SHASKY CALVERY, DEPARTMENT OF TREASURY, FINANCIAL CRIMES ENFORCEMENT NETWORK, JACOB J. LEW. (Powell, Amy) (Entered: 10/16/2015) |
| 10/22/2015 | | | MINUTE ORDER: A Telephonic Conference is set for Friday, October 23,2015 at 10:00 AM in Chambers before Judge Christopher R. Cooper. Signed by Judge Christopher R. Cooper on 10/22/2015. (tcr) (Entered: 10/22/2015) |
| 10/29/2015 | 46 | | TRANSCRIPT OF TELEPHONE CONFERENCE before Judge Christopher R. Cooper held on October 23, 2015; Page Numbers: 1−5. Date of Issuance:October 29, 2015. Court Reporter/Transcriber Lisa A. Moreira, RDR, CRR, Telephone number 202−354−3187, Transcripts may be ordered by submitting the Transcript Order Form.<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 11/19/2015. Redacted Transcript Deadline set for 11/29/2015. Release of Transcript Restriction set for 1/27/2016.(Moreira, Lisa) (Entered: 10/29/2015) |
| 10/30/2015 | 47 | | NOTICE *re: Information Requested by Court* by JENNIFER SHASKY CALVERY, DEPARTMENT OF TREASURY, FINANCIAL CRIMES ENFORCEMENT NETWORK, JACOB J. LEW (Lee, Lynn) (Entered: 10/30/2015) |
| 11/03/2015 | 48 | | RESPONSE re 47 Notice (Other) *re: Information Requested by Court* filed by FBME BANK LTD., FBME LTD.. (Shaffer, Derek) (Entered: 11/03/2015) |
| 11/06/2015 | 49 | | MEMORANDUM OPINION AND ORDER granting 38 Motion to Remand: It is hereby ORDERED that 38 FinCEN's Motion to Remand is GRANTED. It is further ORDERED that, no later than November 30, 2015, FinCEN will publish notice of its intent to reopen the Final Rule and provide relevant unclassified materials to plaintiffs and the public. It is further ORDERED that the deadline for comments on the reopened Final Rule shall be set for no later than two months following FinCEN's notice of intent to reopen the Final Rule. It is further ORDERED that, no later than two months following the deadline for comments, FinCEN will render a decision on the reopened Final Rule. It is further ORDERED that, no later than two weeks after FinCEN renders a decision on the reopened Final Rule, the parties shall meet and confer and submit to the Court a joint status report. It is further ORDERED that this action |

| | | | |
|---|---|---|---|
| | | | be STAYED pending completion of the remand proceedings. Signed by Judge Christopher R. Cooper on 11/6/2015. (lccrc3) (Entered: 11/06/2015) |
| 12/11/2015 | 50 | | NOTICE OF FILING REDACTED DOCUMENT by JENNIFER SHASKY CALVERY, DEPARTMENT OF TREASURY, FINANCIAL CRIMES ENFORCEMENT NETWORK, JACOB J. LEW (The original PDF Document contained privacy information and was restricted pursuant to the E−Government Act.) (Attachments: # 1 Memorandum in Support of Final Rule (evidentiary), # 2 Exhibit 24 to Final Rule memo, # 3 Exhibit 25 to Final Rule memo, # 4 Exhibit 26 to Final Rule memo, # 5 Exhibit 45 to Final Rule memo)(Lee, Lynn) (Entered: 12/11/2015) |
| 02/26/2016 | 51 | | NOTICE *and Request for Hearing* by JENNIFER SHASKY CALVERY, DEPARTMENT OF TREASURY, FINANCIAL CRIMES ENFORCEMENT NETWORK, JACOB J. LEW (Lee, Lynn) (Entered: 02/26/2016) |
| 02/26/2016 | 52 | | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by JENNIFER SHASKY CALVERY, DEPARTMENT OF TREASURY, FINANCIAL CRIMES ENFORCEMENT NETWORK, JACOB J. LEW (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G)(Lee, Lynn) (Entered: 02/26/2016) |
| 02/29/2016 | | | SEALED MINUTE ORDER granting re 52 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by JENNIFER SHASKY CALVERY, DEPARTMENT OF TREASURY, FINANCIAL CRIMES ENFORCEMENT NETWORK, JACOB J. LEW (This document is SEALED and only available to authorized persons.) Signed by Judge Christopher R. Cooper on 2/29/2016.(ztcr) (Entered: 02/29/2016) |
| 02/29/2016 | 53 | | SEALED DOCUMENT filed by JENNIFER SHASKY CALVERY, DEPARTMENT OF TREASURY, FINANCIAL CRIMES ENFORCEMENT NETWORK, JACOB J. LEW. re Sealed Order, 51 Notice (Other) filed by FINANCIAL CRIMES ENFORCEMENT NETWORK, DEPARTMENT OF TREASURY, JACOB J. LEW, JENNIFER SHASKY CALVERY. (This document is SEALED and only available to authorized persons.)(ztd) (Entered: 02/29/2016) |
| 03/01/2016 | 54 | | ORDER denying 51 the parties' joint Request for a Hearing. Signed by Judge Christopher R. Cooper on 3/1/2016. (lccrc3) (Entered: 03/01/2016) |
| 04/05/2016 | 55 | | Joint STATUS REPORT *and Proposed Schedule* by JENNIFER SHASKY CALVERY, DEPARTMENT OF TREASURY, FINANCIAL CRIMES ENFORCEMENT NETWORK, JACOB J. LEW. (Lee, Lynn) (Entered: 04/05/2016) |
| 04/06/2016 | | | MINUTE ORDER: In light of 55 the parties' Joint Status Report, it is hereby ORDERED that, no later than April 22, 2016, Defendants produce the unclassified, non−protected administrative record to Plaintiffs; that, no later than April 29, 2016, Plaintiffs and Defendants cross−move for summary judgment and file opening briefs; and that, no later than May 23, 2016, Plaintiffs and Defendants file briefs responding to the other side's opening brief. It is FURTHER ORDERED that a hearing on the parties' cross−motions for summary judgment be set for Friday, June 3, 2016 at 1:30 PM in Courtroom 27A before Judge Christopher R. Cooper. Signed by Judge |

| | | | |
|---|---|---|---|
| | | | Christopher R. Cooper on 4/6/2016. (lccrc3) (Entered: 04/06/2016) |
| 04/07/2016 | | | Set/Reset Deadlines/Hearings: Cross Motions for summary judgment and opening brief due by 4/29/2016. Responses to opening brief due by 5/23/2016. Motion Hearing set for 6/3/2016 at 1:30 PM in Courtroom 27A before Judge Christopher R. Cooper. (gdf) (Entered: 04/07/2016) |
| 04/08/2016 | | | Set/Reset Hearings: Motion Hearing set for 6/3/2016 at 1:30 PM in Courtroom 27A before Judge Christopher R. Cooper. (tcr) (Entered: 04/08/2016) |
| 04/25/2016 | 56 | | MOTION for Leave to File Excess Pages by FBME BANK LTD., FBME LTD. (Attachments: # 1 Text of Proposed Order Proposed Order)(Shaffer, Derek) (Entered: 04/25/2016) |
| 04/26/2016 | | | MINUTE ORDER granting in part 56 Plaintiffs' Motion for Leave to File Excess Pages: It is hereby ORDERED that Plaintiffs and Defendant may both file an opening memorandum in support of a motion for summary judgment of up to fifty−five (55) pages. Signed by Judge Christopher R. Cooper on 4/26/2016. (lccrc3) (Entered: 04/26/2016) |
| 04/29/2016 | 57 | | NOTICE of Appearance by Jonathan Gordon Cooper on behalf of FBME BANK LTD., FBME LTD. (Cooper, Jonathan) (Entered: 04/29/2016) |
| 04/29/2016 | 58 | | NOTICE *of Lodging* by JENNIFER SHASKY CALVERY, DEPARTMENT OF TREASURY, FINANCIAL CRIMES ENFORCEMENT NETWORK, JACOB J. LEW (Powell, Amy) (Entered: 04/29/2016) |
| 04/29/2016 | 59 | | NOTICE of Appearance by William A. Burck on behalf of FBME BANK LTD., FBME LTD. (Burck, William) (Entered: 04/29/2016) |
| 04/29/2016 | 60 | | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by JENNIFER SHASKY CALVERY, DEPARTMENT OF TREASURY, FINANCIAL CRIMES ENFORCEMENT NETWORK, JACOB J. LEW (This document is SEALED and only available to authorized persons.) (Attachments: # 1 AR0001−AR0044, # 2 AR0045−AR0087, # 3 AR0088−AR0144, # 4 AR0145−AR0249, # 5 AR0250−AR0366, # 6 AR0367−AR0475, # 7 AR0476−AR0580, # 8 AR0581−AR0679, # 9 AR0680−AR0782, # 10 AR0783−AR0844, # 11 AR0845−AR0909, # 12 AR0910−AR1022, # 13 AR1023−AR1157, # 14 AR1158−AR1275, # 15 AR1276−AR1414, # 16 AR1415−AR1529, # 17 AR1530−AR1648, # 18 AR1649−AR1759, # 19 AR1760−AR1885, # 20 AR1886−AR2016, # 21 AR2017−AR2143, # 22 AR2144−AR2240, # 23 AR2241−AR2354, # 24 AR2355−AR2460, # 25 AR2461−AR2544, # 26 AR2545−AR2651, # 27 AR2652−AR2686, # 28 AR2687−AR2761, # 29 AR2762−AR2833, # 30 AR2834−AR2909, # 31 AR2910−AR2974, # 32 AR2975−AR3055, # 33 AR3056−AR3134, # 34 AR3135−AR3234, # 35 AR3235−AR3301, # 36 AR3302−AR3326, # 37 AR3327−AR3364, # 38 AR3365−AR3394, # 39 AR3395−AR3465, # 40 AR3466−AR3547, # 41 AR3548−AR3631, # 42 AR3632−AR3758, # 43 AR3759−AR3831, # 44 AR3832−AR3886, # 45 AR3887−AR3963, # 46 AR3964−AR3983, # 47 AR3984−AR4055, # 48 AR4056−AR4143, # 49 AR4144−AR4219, # 50 AR4220−AR4279, # 51 AR4280−AR4329, # 52 AR4330−AR4374, # 53 AR4375−AR4453, # 54 AR4454−AR4518)(Powell, Amy) (Entered: 04/29/2016) |
| 04/29/2016 | 61 | | |

| | | | |
|---|---|---|---|
| | | | MOTION for Summary Judgment by JENNIFER SHASKY CALVERY, DEPARTMENT OF TREASURY, FINANCIAL CRIMES ENFORCEMENT NETWORK, JACOB J. LEW (Attachments: # 1 Text of Proposed Order)(Lee, Lynn) (Entered: 04/29/2016) |
| 04/29/2016 | 62 | | MOTION for Summary Judgment by FBME BANK LTD., FBME LTD. (Attachments: # 1 Memorandum in Support, # 2 Declaration of Ayoub−Farid Saab, # 3 Declaration of M. Elizabeth Peters, # 4 Text of Proposed Order)(Shaffer, Derek) (Entered: 04/29/2016) |
| 04/29/2016 | 63 | | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by FBME BANK LTD., FBME LTD. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Appendix, # 2 Text of Proposed Order)(Shaffer, Derek) (Entered: 04/29/2016) |
| 04/29/2016 | 64 | | MOTION for Order *to Supplement the Administrative Record* by FBME BANK LTD., FBME LTD. (Attachments: # 1 Text of Proposed Order)(Shaffer, Derek) (Entered: 04/29/2016) |
| 05/02/2016 | | | SEALED MINUTE ORDER granting re 63 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by FBME BANK LTD., FBME LTD. (This document is SEALED and only available to authorized persons.) filed by FBME LTD., FBME BANK LTD..(This document is SEALED and only available to authorized persons.)Signed by Judge Christopher R. Cooper on 5/2/2016.(ztcr) (Entered: 05/02/2016) |
| 05/02/2016 | 65 | | SEALED DOCUMENT (Appendices B−C, E−F, and J−K) filed by FBME BANK LTD., FBME LTD.. re 62 MOTION for Summary Judgment filed by FBME LTD., FBME BANK LTD.. (This document is SEALED and only available to authorized persons.)(znmw) (Entered: 05/03/2016) |
| 05/04/2016 | | | MINUTE ORDER granting 60 Sealed Motion for Leave to File Document Under Seal. Signed by Judge Christopher R. Cooper on 5/4/2016. (tcr) (Entered: 05/04/2016) |
| 05/04/2016 | 66 | | ADMINISTRATIVE RECORD (UNREDACTED LODGED UNDER SEAL AT DOCKET ENTRY NO. 60 ) by JENNIFER SHASKY CALVERY, DEPARTMENT OF TREASURY, FINANCIAL CRIMES ENFORCEMENT NETWORK, JACOB J. LEW. (ztd) (Entered: 05/13/2016) |
| 05/16/2016 | 67 | | RESPONSE re 64 MOTION for Order *to Supplement the Administrative Record* filed by JENNIFER SHASKY CALVERY, DEPARTMENT OF TREASURY, FINANCIAL CRIMES ENFORCEMENT NETWORK, JACOB J. LEW. (Attachments: # 1 Declaration of Richard May)(Lee, Lynn) (Entered: 05/16/2016) |
| 05/16/2016 | 68 | | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by JENNIFER SHASKY CALVERY, DEPARTMENT OF TREASURY, FINANCIAL CRIMES ENFORCEMENT NETWORK, JACOB J. LEW (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(Lee, Lynn) (Entered: 05/16/2016) |
| 05/20/2016 | | | MINUTE ORDER granting re 68 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by JENNIFER SHASKY CALVERY, |

| | | | |
|---|---|---|---|
| | | | DEPARTMENT OF TREASURY, FINANCIAL CRIMES ENFORCEMENT NETWORK, JACOB J. LEW (This document is SEALED and only available to authorized persons.). Signed by Judge Christopher R. Cooper on 5/20/2016. (tcr) (Entered: 05/20/2016) |
| 05/20/2016 | 69 | | SEALED DOCUMENT (Exhibits 1−4) filed by JENNIFER SHASKY CALVERY, DEPARTMENT OF TREASURY, FINANCIAL CRIMES ENFORCEMENT NETWORK, JACOB J. LEW. re Order, 64 MOTION for Order *to Supplement the Administrative Record* filed by FBME LTD., FBME BANK LTD.. (This document is SEALED and only available to authorized persons.)(ztd) (Entered: 05/23/2016) |
| 05/23/2016 | 70 | | Memorandum in opposition to re 61 MOTION for Summary Judgment filed by FBME BANK LTD., FBME LTD.. (Attachments: # 1 Text of Proposed Order)(Shaffer, Derek) (Entered: 05/23/2016) |
| 05/23/2016 | 71 | | REPLY to opposition to motion re 64 MOTION for Order *to Supplement the Administrative Record* filed by FBME BANK LTD., FBME LTD.. (Shaffer, Derek) (Entered: 05/23/2016) |
| 05/23/2016 | 72 | | MOTION To Cross−Examine or Depose Witness or, Alternatively, to Strike Declaration by FBME BANK LTD., FBME LTD. (Attachments: # 1 Text of Proposed Order)(Shaffer, Derek) (Entered: 05/23/2016) |
| 05/23/2016 | 73 | | Memorandum in opposition to re 62 MOTION for Summary Judgment filed by JENNIFER SHASKY CALVERY, DEPARTMENT OF TREASURY, FINANCIAL CRIMES ENFORCEMENT NETWORK, JACOB J. LEW. (Lee, Lynn) (Entered: 05/23/2016) |
| 05/26/2016 | | | MINUTE ORDER: It is hereby ORDERED that Defendant respond to 72 Plaintiff's Motion to Cross−Examine or Depose Witness or, Alternatively, to Strike Declaration by close of business May 31, 2016, and that Plaintiff file any reply by close of business June 1, 2016. Signed by Judge Christopher R. Cooper on 5/26/16. (lccrc1) (Entered: 05/26/2016) |
| 05/26/2016 | 74 | | ERRATA − *Certification of Administrative Record* by JENNIFER SHASKY CALVERY, DEPARTMENT OF TREASURY, FINANCIAL CRIMES ENFORCEMENT NETWORK, JACOB J. LEW 60 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by JENNIFER SHASKY CALVERY, DEPARTMENT OF TREASURY, FINANCIAL CRIMES ENFORCEMENT NETWORK, JACOB J. LEW (This document is SEALED and only available to authorized persons.) filed by FINANCIAL CRIMES ENFORCEMENT NETWORK, DEPARTMENT OF TREASURY, JACOB J. LEW, JENNIFER SHASKY CALVERY, 61 MOTION for Summary Judgment filed by FINANCIAL CRIMES ENFORCEMENT NETWORK, DEPARTMENT OF TREASURY, JACOB J. LEW, JENNIFER SHASKY CALVERY. (Attachments: # 1 Certification of Administrative Record)(Powell, Amy) (Entered: 05/26/2016) |
| 05/27/2016 | | | Set/Reset Deadlines: Response to 72 Plaintiff's Motion to Cross−Examine or Depose Witness or, Alternatively, to Strike Declaration by close of business 5/31/2016; Plaintiff to file reply by close of business 6/1/2016. (kt) (Entered: 05/27/2016) |
| 05/31/2016 | 75 | | |

| | | | |
|---|---|---|---|
| | | | Memorandum in opposition to re 72 MOTION To Cross−Examine or Depose Witness or, Alternatively, to Strike Declaration filed by JENNIFER SHASKY CALVERY, DEPARTMENT OF TREASURY, FINANCIAL CRIMES ENFORCEMENT NETWORK, JACOB J. LEW. (Powell, Amy) (Entered: 05/31/2016) |
| 06/01/2016 | 76 | | REPLY to opposition to motion re 72 MOTION To Cross−Examine or Depose Witness or, Alternatively, to Strike Declaration filed by FBME BANK LTD., FBME LTD.. (Shaffer, Derek) (Entered: 06/01/2016) |
| 06/03/2016 | | | Minute Entry for proceedings held before Judge Christopher R. Cooper: Motion Hearing held on 6/3/2016 re Plaintiffs' 62 MOTION for Summary Judgment Plaintiffs' 64 MOTION for Order to Supplement the Administrative Record and Defendants' 61 MOTION for Summary Judgment; Argument heard and this matter is taken under advisement. Defendants to file their Notice of Declaration within 7 days and Plaintiff to respond thereafter. (Court Reporter Lisa Moreira) (tcr) (Entered: 06/03/2016) |
| 06/03/2016 | | | MINUTE ORDER: As noted during the hearing on parties' cross−motions for summary judgment held June 3, 2016, Defendants are hereby ORDERED to file any declaration detailing FinCEN's compliance with applicable statutory consultation requirements by June 10, 2016. It is further ORDERED that Plaintiffs file any response, not to exceed 10 pages, by June 17, 2016, and that Defendants file any reply, not to exceed 10 pages, by June 22, 2016. Signed by Judge Christopher R. Cooper on 6/3/16. (lccrc1) (Entered: 06/03/2016) |
| 06/06/2016 | | | Set/Reset Deadlines: Defendants to file any declaration detailing FinCEN's compliance with applicable statutory consultation requirements by 6/10/2016; Plaintiffs to file any response, not to exceed 10 pages, by 6/17/2016; Defendants to file any reply, not to exceed 10 pages, by 6/22/2016. (kt) (Entered: 06/06/2016) |
| 06/07/2016 | 77 | | TRANSCRIPT OF MOTIONS HEARING before Judge Christopher R. Cooper held on June 3, 2016; Page Numbers: 1−110. Date of Issuance:June 7, 2016. Court Reporter/Transcriber Lisa A. Moreira, RDR, CRR, Telephone number 202−354−3187, Transcripts may be ordered by submitting the Transcript Order Form.<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 6/28/2016. Redacted Transcript Deadline set for 7/8/2016. Release of Transcript Restriction set for 9/5/2016.(Moreira, Lisa) |

| | | | |
|---|---|---|---|
| | | | (Entered: 06/07/2016) |
| 06/08/2016 | 78 | | Joint STATUS REPORT by FBME BANK LTD., FBME LTD.. (Shaffer, Derek) (Entered: 06/08/2016) |
| 06/10/2016 | 79 | | NOTICE *of Filing of Declaration* by JENNIFER SHASKY CALVERY, DEPARTMENT OF TREASURY, FINANCIAL CRIMES ENFORCEMENT NETWORK, JACOB J. LEW (Attachments: # 1 Declaration of Richard May)(Lee, Lynn) (Entered: 06/10/2016) |
| 06/13/2016 | 80 | | RESPONSE re 79 Notice (Other) *of Filing of Declaration* filed by FBME BANK LTD., FBME LTD.. (Shaffer, Derek) (Entered: 06/13/2016) |
| 06/22/2016 | 81 | | SUPPLEMENTAL MEMORANDUM to re 80 Response to Document filed by JENNIFER SHASKY CALVERY, DEPARTMENT OF TREASURY, FINANCIAL CRIMES ENFORCEMENT NETWORK, JACOB J. LEW. (Powell, Amy) (Entered: 06/22/2016) |
| 07/22/2016 | 82 | | ORDER staying implementation of the final rule pending judicial review, pursuant to 5 U.S.C. § 705. Signed by Judge Christopher R. Cooper on 7/22/2016. (lccrc3) (Entered: 07/22/2016) |
| 09/20/2016 | 83 | | MEMORANDUM OPINION re: 61 Defendants' Motion for Summary Judgment; 62 Plaintiffs' Motion for Summary Judgment; 64 Plaintiffs' Motion for Order to Supplement the Administrative Record; 72 Plaintiffs' Motion to Cross−Examine or Depose Richard May. Signed by Judge Christopher R. Cooper on 9/20/2016. (lccrc1) (Entered: 09/20/2016) |
| 09/20/2016 | 84 | | ORDER: It is hereby ORDERED that 61 Defendants' Motion for Summary Judgment and 62 Plaintiffs' Motion for Summary Judgment shall be GRANTED IN PART and DENIED IN PART. Summary judgment is GRANTED to Defendants except to the extent FinCEN failed to respond to FBME's significant comments regarding Defendants' analysis of SARs data, as outlined in the accompanying Memorandum Opinion. This matter is hereby REMANDED to FinCEN for proceedings consistent with the Opinion. The Rule shall remain stayed until the agency furnishes adequate responses to FBME's significant comments. It is further ORDERED that 64 Plaintiffs' Motion for Order to Supplement the Administrative record is DENIED. It is further ORDERED that 72 Plaintiffs' Motion to Cross−Examine or Depose Richard May is DENIED. Signed by Judge Christopher R. Cooper on 9/20/2016. (lccrc1) (Entered: 09/20/2016) |
| 10/28/2016 | 85 | | STATUS REPORT by JENNIFER SHASKY CALVERY, DEPARTMENT OF TREASURY, FINANCIAL CRIMES ENFORCEMENT NETWORK, JACOB J. LEW. (Lee, Lynn) (Entered: 10/28/2016) |
| 11/01/2016 | 86 | | STATUS REPORT by FBME BANK LTD., FBME LTD.. (Shaffer, Derek) (Entered: 11/01/2016) |
| 12/08/2016 | 87 | | Joint MOTION for Briefing Schedule and Joint STATUS REPORT by JENNIFER SHASKY CALVERY, DEPARTMENT OF TREASURY, FINANCIAL CRIMES ENFORCEMENT NETWORK, JACOB J. LEW. (Lee, Lynn) Modified event title on 12/9/2016 (znmw). (Entered: 12/08/2016) |
| 12/08/2016 | | | MINUTE ORDER: In light of 87 the parties' Joint Status Report, it is hereby ORDERED that, no later than December 12, 2016, Defendants move for |

| | | | |
|---|---|---|---|
| | | | summary judgment (brief limited to 8 pages); that, no later than January 10, 2017, Plaintiffs oppose & cross−move for summary judgment (brief limited to 15 pages); that, no later than January 31, 2017, Defendants reply & oppose the cross−motion (brief limited to 15 pages); and that, no later than February 10, 2017, Plaintiffs reply in support of the cross−motion (brief limited to 8 pages). Signed by Judge Christopher R. Cooper on 12/8/2016. (lccrc1) (Entered: 12/08/2016) |
| 12/09/2016 | | | Set/Reset Deadlines: Dispositive Motions due by 12/12/2016. Response to Dispositive Motions due by 1/10/2017. Reply to Dispositive Motions due by 1/31/2017. Plaintiffs reply in support of the cross−motion due by 2/10/2017. (zlsj) Modified on 12/9/2016 (lsj). (Entered: 12/09/2016) |
| 12/12/2016 | 88 | | Second MOTION for Summary Judgment by JENNIFER SHASKY CALVERY, DEPARTMENT OF TREASURY, FINANCIAL CRIMES ENFORCEMENT NETWORK, JACOB J. LEW (Attachments: # 1 Exhibit 1, # 2 Text of Proposed Order)(Lee, Lynn) (Entered: 12/12/2016) |
| 01/10/2017 | 89 | | Cross MOTION for Summary Judgment or, in the alternative, MOTION to Continue Stay Pending Appeal by FBME BANK LTD., FBME LTD. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Shaffer, Derek). Added MOTION to Continue on 1/11/2017 (jf). (Entered: 01/10/2017) |
| 01/10/2017 | 90 | | Memorandum in opposition to re 88 Second MOTION for Summary Judgment filed by FBME BANK LTD., FBME LTD.. (Attachments: # 1 Text of Proposed Order)(Shaffer, Derek) (Entered: 01/10/2017) |
| 01/11/2017 | | | NOTICE OF ERROR re 89 Motion for Summary Judgment; emailed to derekshaffer@quinnemanuel.com, cc'd 6 associated attorneys −− The PDF file you docketed contained errors: 1. Two−part docket entry, 2. Counsel is docket all parts of their motion (jf, ) (Entered: 01/11/2017) |
| 01/11/2017 | 91 | | ERRATA by FBME BANK LTD., FBME LTD. 89 Cross MOTION for Summary Judgment filed by FBME LTD., FBME BANK LTD., 90 Memorandum in Opposition filed by FBME LTD., FBME BANK LTD.. (Attachments: # 1 Errata First Page of Memorandum In Support of Plaintiffs' Cross Motion for Summary Judgment Or, In the Alternative, For A Continued Stay Pending Appeal, And In Opposition To Defendants' Renewed Motion for Summary Judgment)(Shaffer, Derek) (Entered: 01/11/2017) |
| 01/17/2017 | 92 | | MOTION for Reconsideration by FBME BANK LTD., FBME LTD. (Attachments: # 1 Memorandum in Support, # 2 Declaration of George Z. Georgiou, # 3 Text of Proposed Order)(Shaffer, Derek) (Entered: 01/17/2017) |
| 01/17/2017 | 93 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 92 MOTION for Reconsideration by JENNIFER SHASKY CALVERY, DEPARTMENT OF TREASURY, FINANCIAL CRIMES ENFORCEMENT NETWORK, JACOB J. LEW (Attachments: # 1 Text of Proposed Order)(Lee, Lynn) (Entered: 01/17/2017) |
| 01/18/2017 | | | MINUTE ORDER granting 93 Motion for Extension of Time to File Response/Reply: Defendants shall oppose Plaintiff's 92 Motion for Reconsideration on or before February 17, 2017. Signed by Judge Christopher R. Cooper on 1/18/2017. (lccrc3) (Entered: 01/18/2017) |

| | | | |
|---|---|---|---|
| 01/23/2017 | | | Set/Reset Deadlines: Replies due by 2/17/2017. (zlsj) (Entered: 01/23/2017) |
| 01/31/2017 | 94 | | REPLY to opposition to motion re 88 Second MOTION for Summary Judgment filed by JENNIFER SHASKY CALVERY, DEPARTMENT OF TREASURY, FINANCIAL CRIMES ENFORCEMENT NETWORK, JACOB J. LEW. (Lee, Lynn) (Entered: 01/31/2017) |
| 02/01/2017 | 95 | | Memorandum in opposition to re 89 Cross MOTION for Summary Judgment filed by JENNIFER SHASKY CALVERY, DEPARTMENT OF TREASURY, FINANCIAL CRIMES ENFORCEMENT NETWORK, JACOB J. LEW. (Lee, Lynn) (Entered: 02/01/2017) |
| 02/06/2017 | 96 | | REPLY to opposition to motion re 89 Cross MOTION for Summary Judgment filed by FBME BANK LTD., FBME LTD.. (Shaffer, Derek) (Entered: 02/06/2017) |
| 02/14/2017 | 97 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 92 MOTION for Reconsideration by JENNIFER SHASKY CALVERY, DEPARTMENT OF TREASURY, FINANCIAL CRIMES ENFORCEMENT NETWORK, JACOB J. LEW (Powell, Amy) (Entered: 02/14/2017) |
| 02/15/2017 | | | MINUTE ORDER granting 97 Motion for Extension of Time to File Response/Reply: It is hereby ORDERED that Defendants shall file their opposition to Plaintiff's Motion for Reconsideration no later than February 24, 2017. Signed by Judge Christopher R. Cooper on 2/15/2017. (lccrc1) (Entered: 02/15/2017) |
| 02/24/2017 | 98 | | Memorandum in opposition to re 92 MOTION for Reconsideration filed by JENNIFER SHASKY CALVERY, DEPARTMENT OF TREASURY, FINANCIAL CRIMES ENFORCEMENT NETWORK, JACOB J. LEW. (Attachments: # 1 Declaration (Third) of Richard May)(Powell, Amy) (Entered: 02/24/2017) |
| 02/24/2017 | 99 | | NOTICE *of Classified Lodging* by JENNIFER SHASKY CALVERY, DEPARTMENT OF TREASURY, FINANCIAL CRIMES ENFORCEMENT NETWORK, JACOB J. LEW (Powell, Amy) (Entered: 02/24/2017) |
| 03/01/2017 | 100 | | REPLY to opposition to motion re 92 MOTION for Reconsideration filed by FBME BANK LTD., FBME LTD.. (Shaffer, Derek) (Entered: 03/01/2017) |
| 04/14/2017 | 101 | 19 | MEMORANDUM OPINION re: 88 Defendants' Motion for Summary Judgment; 89 Plaintiffs' Cross−Motion for Summary Judgment; 92 Plaintiffs' Motion for Reconsideration. Signed by Judge Christopher R. Cooper on 4/14/2017. (lccrc1) (Entered: 04/14/2017) |
| 04/14/2017 | 102 | | ORDER: It is hereby ORDERED that 88 Defendants' Motion for Summary Judgment be GRANTED. It is further ORDERED that 89 Plaintiffs' Cross−Motion for Summary Judgment be DENIED. It is further ORDERED that 92 Plaintiffs' Motion for Reconsideration be DENIED. It is further ORDERED that the previously imposed stay be LIFTED. Signed by Judge Christopher R. Cooper on 4/14/2017. (lccrc1) (Entered: 04/14/2017) |
| 04/14/2017 | 103 | | Emergency MOTION to Stay *for 14 Days* by FBME BANK LTD., FBME LTD. (Attachments: # 1 Text of Proposed Order Proposed Order)(Shaffer, Derek) (Entered: 04/14/2017) |

| | | | |
|---|---|---|---|
| 04/14/2017 | 104 | | NOTICE *of Status Update* by FBME BANK LTD., FBME LTD. re 103 Emergency MOTION to Stay *for 14 Days* (Shaffer, Derek) (Entered: 04/14/2017) |
| 04/17/2017 | 105 | | ENTERED IN ERROR.....NOTICE *OF APPEAL* by FBME BANK LTD., FBME LTD. re 102 Order on Motion for Summary Judgment,,,, Order on Motion for Reconsideration,, Order on Motion to Continue, (Shaffer, Derek) Modified on 4/17/2017 (zjf). (Entered: 04/17/2017) |
| 04/17/2017 | | | MINUTE ORDER granting 103 Motion for Temporary Administrative Stay: Plaintiffs' Motion for a fourteen−day administrative stay, consented to by the Government, is hereby GRANTED. Signed by Judge Christopher R. Cooper on 4/17/2017. (lccrc1) (Entered: 04/17/2017) |
| 04/17/2017 | | | NOTICE OF CORRECTED DOCKET ENTRY: Document No. re 105 Notice (Other) was entered in error and counsel was instructed to refile said pleading using the Appeal category event. (jf) (Entered: 04/17/2017) |
| 04/17/2017 | 106 | | NOTICE OF APPEAL TO DC CIRCUIT COURT by FBME BANK LTD., FBME LTD.. Filing fee $ 505, receipt number 0090−4916460. Fee Status: Fee Paid. Parties have been notified. (Shaffer, Derek) (Entered: 04/17/2017) |
| 04/17/2017 | | | USCA Case Number 17−5076 for 106 Notice of Appeal to DC Circuit Court filed by FBME LTD., FBME BANK LTD.. (td) (Entered: 04/18/2017) |
| 04/18/2017 | 107 | | Transmission of the Notice of Appeal, Order Appealed, and Docket Sheet to US Court of Appeals. The Court of Appeals fee was paid this date 4/17/17 USCA NO.17−5076 re 106 Notice of Appeal to DC Circuit Court. (td) (Entered: 04/18/2017) |

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FBME BANK LTD., et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**STEVEN MNUCHIN,[1] in his official capacity as Secretary of the Treasury, et al.,**<br><br>Defendants. | Case No. 15-cv-01270 (CRC) |

## MEMORANDUM OPINION

Sometimes, the third time really is the charm. The Financial Crime Enforcement Network ("FinCEN") first imposed the PATRIOT ACT's "fifth special measure" against Plaintiff FBME Bank Ltd. ("FBME" or the "Bank") via rulemaking in July 2015. After this Court preliminarily enjoined the rule, FinCEN sought a voluntary remand to correct certain deficiencies identified by the Court, and for a second time promulgated a rule imposing the measure against the Bank. Most of the prior inadequacies were addressed, but in September 2016, the Court returned the matter once again to the agency, noting that it had failed to respond to several significant comments FBME had submitted during the second rulemaking process. On remand, FinCEN supplemented its rule with responses to those comments, and now renews its motion for summary judgment. Finding that FinCEN has met its obligation to respond "in a reasoned manner" to FBME's comments, Reytblatt v. Nuclear Regulatory Comm'n, 105 F.3d 715, 722 (D.C. Cir. 1997), the Court will grant the agency's motion.

[1] By operation of Fed. R. Civ. P. 25(d), the current Secretary of the Treasury, as former Secretary Lew's successor, has been "automatically substituted as a party."

## I. Background

A. Previous Proceedings and Summary Judgment Opinion[2]

In July 2015, FinCEN, a component of the U.S. Department of the Treasury, promulgated a Final Rule imposing the "fifth special measure" against FBME under Section 311 of the USA PATRIOT Act of 2001.[3] The Rule, aimed at blocking FBME from doing business in the United States or using U.S. dollars, prohibited domestic financial institutions from opening or maintaining correspondent bank accounts on behalf of FBME. In August 2015, in light of apparent procedural deficiencies in the Rule's promulgation and the likelihood of irreparable harm to FBME, the Court granted the Bank's motion to preliminarily enjoin the Rule. FBME Bank Ltd. v. Lew ("FBME I"), 125 F. Supp. 3d 109, 114 (D.D.C. 2015). Soon thereafter, the Court permitted FinCEN to voluntarily remand the proceedings in order to conduct a new rulemaking and correct deficiencies. FBME Bank Ltd. v. Lew ("FBME II"), 142 F. Supp. 3d 70, 72 (D.D.C. 2015). After reopening the Rule to solicit comments, FinCEN published a new Rule ("Second Final Rule") in March 2016, reiterating its finding that FBME was an institution of primary money laundering concern and again imposing the fifth special measure. 81 Fed. Reg. 18480 (Mar. 31, 2016).

The parties subsequently filed cross-motions for summary judgment as to the Second Final Rule's compliance with the Administrative Procedure Act ("APA") and constitutional due process. In September 2016, the Court granted in part and denied in part FinCEN's motion for

[2] The history of this litigation has been recounted more extensively elsewhere. See FBME Bank Ltd. v. Lew ("FBME I"), 125 F. Supp. 3d 109 (D.D.C. 2015); FBME Bank Ltd. v. Lew ("FBME II"), 142 F. Supp. 3d 70 (D.D.C. 2015); FBME Bank Ltd. v. Lew ("FBME III"), No. 15-cv-1270, 2016 WL 5108018 (D.D.C. Sept. 20, 2016). A brief synopsis is included here.

[3] Throughout this Opinion, the Court will collectively refer to Defendants as "FinCEN," and to Plaintiffs as "FBME."

summary judgment. FBME Bank Ltd. v. Lew ("FBME III"), 2016 WL 5108018 (D.D.C. Sept. 20, 2016). The Court found that FinCEN's rulemaking process had been lacking in some respects, but that those errors were ultimately harmless. Id. at *5–*15. The Court also rejected FBME's constitutional due process arguments, id. at *15–*20, and most of its arguments that the Second Final Rule was substantively arbitrary and capricious, id. at *20–*29.

The Court did, however, "conclude[] that FinCEN [had] failed adequately to respond to certain significant comments made by FBME concerning the agency's reliance on data drawn from Suspicious Activity Reports ("SARs") submitted by other financial institutions concerning transactions with the Bank." Id. at *5.[4] In particular, FBME had raised the following concerns regarding SARs data, none of which FinCEN had adequately responded to: (1) that SARs included so much legitimate activity (along with illicit transactions) that they were unreliable; (2) that the number of suspicious transactions was actually quite low as a proportion of FBME's overall transactions; (3) that FinCEN had failed to consider alternative explanations for the increase in SARs involving FBME, including the Cypriot financial crisis; and (4) that FinCEN provided no benchmark or baseline for measuring abnormal or acceptable SARs rates. Id. at *20. The Court considered these comments "significant," because "resolving them in the Bank's favor would likely have 'require[d] a change in [FinCEN's] proposed rule.'" Id. at 23 (quoting City of Portland, Oregon v. EPA, 507 F.3d 706, 715 (D.C. Cir. 2007)). Accordingly, while the Court declined to vacate the Rule, it remanded the matter to FinCEN so that it could adequately respond to the relevant comments. In the meantime, the Court continued to stay the implementation of the Rule.

[4] SARs are reports by banks and other financial institutions disclosing transactions that the institution knows or suspects to involve possible illegal activity.

B. Remand, Supplement and Renewed Summary Judgment Motions

On remand, FinCEN authored a supplement to the Second Final Rule, which was published on December 1, 2016. See Supplemental Information Regarding the Final Rule Imposing the Fifth Special Measure Against FBME Bank, Ltd., 81 Fed. Reg. 86577 (Dec. 1, 2016) ("Supplement"). In the Supplement, FinCEN acknowledged this Court's conclusion that "[it] had not responded meaningfully to FBME's comments regarding the agency's treatment of aggregate SAR data." Id. at 86577. The agency went on to identify the four significant comments enumerated above, and to offer substantive responses to each one. Id. at 86577–79. First, the agency responded to FBME's concern that SARs were unreliable because they included too much legitimate activity by explaining that the data was primarily valuable to show the Bank's high volume of shell-company transactions (itself an indicator of money-laundering activity). Id. Second, regarding FBME's concern about FinCEN's focus on absolute versus proportional numbers of SARs transactions, the agency conceded that its focus was "the substantial volume of all suspicious activity at the bank," and explained that "extensive legitimate activities" alone could not save an institution from the imposition of special measures. Id. at 86578. Third, even if SARs data had been inflated by the Cypriot financial crisis (as FBME posited), that effect would have accounted for only a small portion of the "hundreds of millions of dollars" of suspected shell company activities identified between 2006 and 2014. Id. Fourth, FinCEN rejected FBME's call for a benchmark or some other means of comparing the Bank's SARs data to other banks: The agency pointed out other facts that distinguished FBME, and worried that setting a benchmark might "simply set a target for banks or customers wishing to evade money laundering controls." Id. at 86578–79.

In light of the Supplement, FinCEN renews its motion for summary judgment, arguing that it has now complied with its obligation to respond adequately to all significant comments. FBME disagrees: It cross-moves for summary judgment, and contends that FinCEN's supplemental responses indicate an "inability or refusal to engage in reasoned decision-making." Pls.' Mem. Supp. Cross-Mot. Summ. J. ("Pls.' Cross-MSJ") 1. In the alternative, FBME requests that the Court stay the Second Final Rule pending appeal.

C. FBME's Motion for Reconsideration

Meanwhile, as the parties completed summary judgment briefing, FBME moved the Court to reconsider certain aspects of its September 2016 Opinion and Order, under Federal Rule of Civil Procedure 54(b). FBME alleges that FinCEN excluded from the administrative record a report that the agency "secretly received and considered . . . in February 2015." Pls.' Mem. Supp. Mot. for Reconsideration ("Pls.' Mot. Reconsider") 1. The Central Bank of Cyprus ("CBC") prepared this "February Report" to summarize the findings of an FBME audit it conducted with PricewaterhouseCoopers ("PwC") in the summer of 2014. FBME points to a series of emails it recently uncovered, between the CBC and Richard May—then the Director of FinCEN's Office of Special Measures—revealing that May received a confidential copy of the February Report via email on February 13, 2015, and that between August 2015 and March 2016, May sought permission from the CBC to disclose the Report, either to U.S. courts or generally. See Pls.' Mot. Reconsider, Declaration of George Z. Georgiou ("Georgiou Decl.") ¶¶ 15–20.[5]

[5] The evidence was uncovered in the course of litigation involving FBME in Cyprus, and is described in a declaration submitted by FBME's Cypriot lawyer, George Z. Georgiou. Georgiou Decl. ¶¶ 1, 4. He and four other FBME lawyers "examined four boxes provided by CBC" and were "permitted . . . to take detailed and/or verbatim notes," but not "to photocopy, photograph, or otherwise copy the documents." Id. at ¶ 14. Mr. Georgiou attests to the timing

In FBME's view, this evidence indicates that FinCEN "willfully circumvented obligations to compile the Administrative Record" and "cast[s] grave doubt" on the declarations of Richard May—who had, among other things, attested to the record's completeness. Pls.' Mot. Reconsider 3. FBME asks the Court to: (1) retract its prior determination that FinCEN had afforded FBME sufficient due process by adequately disclosing unclassified, unprotected material and giving the Bank an opportunity to respond, see FBME III, 2016 WL 5108018, at *18; (2) grant FBME's request for a privilege log to describe the basis for any withheld documents, which the Court had previously denied, see id., at *8; and (3) order the deposition of Richard May, which the Court had earlier declined to do, see id., at *15 n.5. See Pls.' Mot. Reconsider 20–24.

FinCEN responds that none of the evidence FBME has presented establishes that "the February Report was considered by the agency and improperly excluded from the record." Defs.' Mem. Opp'n Pls.' Mot. Reconsider ("Defs.' Opp'n") 7–8. The facts FBME has put forth, the agency points out, do not foreclose the conclusions either that (1) FinCEN never "considered [the February Report] as part of the rulemaking or submitted it to the decisionmaker," or that (2) "FinCEN did consider it but treated the communication as classified, considering the request of a foreign government." Id. at 8. Regarding the latter possibility, although FinCEN cannot "comment publicly on the specific substantive content of the classified or otherwise protected portions of the administrative record," including whether or not that classified portion of the

---

and content of the relevant email messages, and also attaches as an exhibit to his declaration what he describes as "to the best of my knowledge and belief a very similar, if not identical copy" of the February Report, obtained from FBME's shareholders. Id. at ¶ 15. As FinCEN points out, see Defs.' Mem. Opp'n Pls.' Mot. Reconsider ("Defs.' Opp'n") 4 n.2, there are obvious authentication issues with the exhibit, but those are unnecessary to resolve for the purposes of FBME's motion.

record includes the February Report, the agency submitted separately, *ex parte* and *in camera*, "a classified declaration to identify for the Court whether any of [the] information described by [FBME] appears in the administrative record." Id. at 9. The Court has reviewed that classified lodging in resolving FBME's motion.

## II. Legal Standards

### A. Summary Judgment Motions

When an agency action is challenged under the APA, "[s]ummary judgment . . . serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the [relevant] APA standard of review." Coe v. McHugh, 968 F. Supp. 2d 237, 240 (D.D.C. 2013); see also Sec. Indus. & Fin. Markets Ass'n v. United States Commodity Futures Trading Comm'n, 67 F. Supp. 3d 373, 399 (D.D.C. 2014) ("[T]he general standard for summary judgment set forth in Rule 56 of the Federal Rules of Civil Procedure does not apply to a review of agency actions."). As relevant here, the APA directs a reviewing court to "hold unlawful and set aside [any] agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

"The requirement that agency action not be arbitrary or capricious includes a requirement that the agency . . . respond to 'relevant' and 'significant' public comments." City of Portland, Oregon v. EPA, 507 F.3d 706, 713 (D.C. Cir. 2007) (quoting Pub. Citizen, Inc. v. FAA, 988 F.2d 186, 197 (D.C. Cir. 1993)). There is no requirement, however, that an agency respond to significant comments in a manner that satisfies the commenter. Instead, to respond adequately, the agency must only address significant comments "in a reasoned manner," Reytblatt v. Nuclear Regulatory Comm'n, 105 F.3d 715, 722 (D.C. Cir. 1997), that allows a court "to see what major

issues of policy were ventilated . . . and why the agency reacted to them as it did," Pub. Citizen, Inc. v. FAA, 988 F.2d 186, 197 (D.C. Cir. 1993). In other words, the agency's responses must show that its "decision was . . . based on a consideration of the relevant factors." Thompson v. Clark, 741 F.2d 401, 409 (D.C. Cir. 1984).[6]

B. Motion for Reconsideration

Federal Rule of Civil Procedure 54(b) provides that an interlocutory order "may be revised at any time before the entry of a [final] judgment." Although the Rule does not specify a standard of review, motions for reconsideration of interlocutory orders should be granted only "as justice requires." United States ex rel. Landis v. Tailwind Sports Corp., 160 F. Supp. 3d 253, 267 (D.D.C. 2016) (quoting United States v. Slough, 61 F. Supp. 3d 103, 107 (D.D.C. 2014)). More specifically, a court may reconsider an interlocutory order "when the movant demonstrates: (1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error in the first order." BEG Investments, LLC v. Alberti, 85 F. Supp. 3d 54, 58 (D.D.C. 2015) (quoting Stewart v. Panetta, 826 F. Supp. 2d 176, 177 (D.D.C.

[6] FBME argues that a higher level of scrutiny necessarily applies in reviewing an agency action that reaches the same result following remand. See Pls.' Cross-MSJ 2–3. But the cases it cites for support are distinguishable. In Food Marketing Institute v. ICC, 587 F.2d 1285 (D.C. Cir. 1978), the court had remanded a decision after identifying a material error in the agency's reasoning, in particular an "inference [that] was not supported by the evidence." Id. at 1288. Plus, the agency's decision following remand "reaffirmed a decision that itself departed drastically from" prior agency policy. Id. at 1290. Those circumstances signified irregularity, and understandably heightened the court's skepticism of the agency's post-remand actions. Here, by contrast, the Court remanded not for the correction of an analytical error but for the augmentation of FinCEN's reasoning, and in remanding without vacatur, the Court was "convinced" of a "substantial probability that FinCEN could respond adequately to FBME's comments" and thereby justify implementation of the Rule. FBME III, 2016 WL 5108018, at *30. It is not suspicious that FinCEN has now claimed to have done just that. Accordingly, Food Marketing Institute and Natural Resources Defense Council, Inc. v. SEC, 606 F.2d 1031 (D.C. Cir. 1979)—which cites the former case in passing and in a broad-brush footnote, id. at 1049 n.23—are inapposite.

2011)). "The burden is on the moving party to show that reconsideration is appropriate and that harm or injustice would result if reconsideration were denied." U.S. ex rel. Westrick v. Second Chance Body Armor, Inc., 893 F. Supp. 2d 258, 268 (D.D.C. 2012).

## III. Analysis

### A. Summary Judgment Motions

As discussed above, FinCEN has renewed its motion for summary judgment, arguing that the Supplement—which identifies and responds to each of the comments outlined in the Court's September Opinion—brings the Rule squarely within the APA's requirements. Unsurprisingly, FBME does not agree: The Bank argues that FinCEN, even accounting for the Supplement, has failed to respond adequately to *any* of its comments regarding the agency's use of SARs data. The Court will therefore consider the adequacy of each of FinCEN's responses, asking whether the agency reasonably discussed the "major issues of policy that were ventilated" and "why the agency reacted to them as it did." Pub. Citizen, 988 F.2d at 197.

#### *1. SARs' Inclusion of Too Much Legitimate Activity*

FinCEN responded to FBME's concern that SARs were "overinclusive"—capturing too much legitimate activity to reliably indicate illicit activity—in two main ways. The agency noted, first, that the SARs data was primarily valuable as "qualitative evidence" of suspicious activity, in that "many of the SARs relating to FBME describe typical indicators of shell company activity"—including such activity "with no apparent business purpose." Supplement at 86577–78. Second, FinCEN challenged the premise of the concern: It asserted that SARs "more likely . . . understate the size and frequency of shell company and other suspicious activity conducted by FBME," particularly in light of evidence that FBME had evaded anti-money laundering ("AML") regulations. Id. at 86578.

In response to FinCEN's claim that it used SARs primarily as "qualitative" indicators of shell company activity, FBME argues that *this* practice was overinclusive, too, since "shell-company activity is not inherently indicative of money laundering." Defs.' Cross-MSJ 12. But FinCEN did not just count shell-company transactions: The agency notes in its Supplement that it was "particularly concerned . . . by the lack of transparency associated with" shell company transactions, and by many of the shell companies' lack of "apparent business purpose." Supplement at 86577–78; see also Second Final Rule, at 18487 (noting the agency's consideration of, *inter alia*, "the lack of transparency with respect to beneficial ownership or legitimate business purposes of many of FBME's shell company customers" and "the high volume of U.S. dollar transactions conducted by these shell companies with no apparent business purpose"). In other words, the problem was not just the high number of shell companies, but their apparent nature, purpose, and use.

FBME also faults FinCEN for "relying on untold numbers of SARs that have nothing to do with shell-company activity." Defs.' Cross-MSJ 12. FinCEN not only downplayed its reliance on such quantitative data, however, it also also explained that those overall numbers—which reflect not only shell-company transactions but "other suspicious activity," Supplement, at 86578—likely understate suspicious activity due to FBME's weak AML controls. The Bank does not seriously challenge that contention, except by calling it "speculation." Defs.' Reply Supp. Cross-Mot. Summ. J. ("Defs.' Reply") 7 n.1. But FinCEN's findings that FBME had evaded AML controls *were* based on investigative evidence. See Second Final Rule at 18482–83. Accordingly, its statement that SARs data likely understates illicit activity due to weak AML controls is not speculative, but a logical inference based on a factual finding. The Court

therefore concludes that FinCEN adequately responded to FBME's concern about SARs' overinclusiveness.

*2. Use of Absolute Rather than Proportional SARs Data*

In response to FBME's concern about FinCEN's focus on the absolute rather than proportional volume of its suspicious activity, the agency conceded that—at least when it came to SARs numbers—its focus *was* on absolute data. In the Supplement, FinCEN explains that the absolute volume of suspicious activity is a more valuable metric because it indicates whether a bank "poses a significant threat to the U.S. and international financial systems" by "allowing large amounts of funding to pass to terrorist or criminal activity." Supplement at 86578. On the other hand, a focus on proportional SARs data "would essentially permit significant volumes of money to pass through large banks." Id. Thus, FinCEN "may identify a bank as a financial institution of primary money laundering concern . . . even if [the institution] has extensive legitimate activities." Id.

FBME counters that FinCEN's reliance on absolute numbers is an approach at odds with the statutory factors the agency is bound to consider when deeming an institution one of primary money-laundering concern. See 31 U.S.C. § 5318A(c)(2)(B)(i) (requiring a consideration of "the extent to which [a] financial institution[] . . . [is] used to facilitate or promote money laundering"); id. at § 5318A(c)(2)(B)(ii) (requiring a consideration of "the extent to which [an] institution[] . . . [is] used for legitimate business"). More specifically, FBME contends that the phrase "extent to which" necessarily requires a proportional analysis. Pls.' Cross-MSJ 8. And it asserts that FinCEN's conceded focus on absolute numbers of suspicious transactions means it did *not* consider the extent of FBME's legitimate business.

These arguments fail for several reasons. First, they are beyond the scope of the Court's review on this motion, which is limited to considering whether FinCEN adequately responded to FBME's comments regarding SARs data—not evaluating whether the agency properly applied the statutory factors. The Court has twice before considered and rejected such arguments. See FBME I, 125 F. Supp. 3d at 125; FBME III, 2016 WL 5108018, at *24–*26. Second, there is no reason to construe the word "extent" to require proportional data, as FBME would prefer. FinCEN's understanding of that term—that the "overall amount" of activity can also indicate the "extent" of such activity, Supplement at 86578—is reasonable. Third, even if consideration of some proportional data were an analytical requirement, it would apply to FinCEN's consideration of the *statutory factors*, not SARs data. And in evaluating that broader, former category, FinCEN considered a variety of information, including some proportional data. For instance, in considering the "extent" of FBME's "legitimate business," 31 U.S.C. § 5318A(c)(2)(B)(ii), FinCEN noted that between 12 and 27 percent of FBME's customers were high-risk, including a high volume of shell company customers and politically exposed persons ("PEPs"). See FBME III, 2016 WL 5108018, at *25.[7]

For all of these reasons, FBME's arguments are unavailing, and the Court finds that FBME has adequately responded to FinCEN's concerns about the use of absolute versus proportional SARs data.

*3. Cypriot Financial Crisis as an Alternative Explanation for High SARs Rates*

FinCEN offered several responses to FBME's concerns that the Cypriot financial crisis had artificially inflated the Bank's SARs numbers, and some of those responses were more lucid

[7] FBME correctly surmises that, in its prior Opinion, the Court considered FinCEN to have "correspondingly analyzed" the extent of the Bank's legitimate activity by considering the proportion of its *il*legitimate activity. Pls.' Cross-MSJ 9.

than others. It is unclear, for instance, whether FinCEN's statement that it "finds no reason to assume that any renewed focus on Cypriot financial controls would decrease rather than increase the credibility of SAR filings as to FBME" has *any* substantive content. Id. And FinCEN's vague remark that "SARs typically deal with suspicious activity by individuals and entities conducting transactions, not systemic issues involving debt defaults and liquidity challenges by financial institutions" misses the point. FBME's whole concern was that "systemic issues" related to the crisis (*e.g.*, regulatory controls that limited withdrawal rates) may have *affected* rates of apparently "suspicious activity by individuals and entities" (*e.g.*, legitimate withdrawals that looked like structuring), thereby artificially inflating SARs numbers. See A.R. 3342–43. FBME fairly criticizes the above responses.

However, FinCEN's main point in response is straightforward. The agency explained that its conclusions did not materially "rely" on any increase in "the number of SAR filings involving FBME . . . during the Cypriot financial crisis as compared to past periods in the analysis." Id. That follows because the agency considered "shell company activities accounting for hundreds of millions of dollars between 2006 [and] 2014," a stretch of time "not limited to the period of the Cypriot financial crisis." Id. In support, FinCEN cites its analysis in the 2014 Notice of Finding ("NOF"), 79 Fed. Reg. 42639, where in a section devoted to summarizing evidence of the Bank's weak AML controls and obscured transactions, the agency cited figures spanning the 2006–2014 period. The agency noted: (1) that "[w]ire transfers related to suspected shell company activities accounted for hundreds of millions of dollars of FBME's financial activity between 2006 and 2014"; (2) that "FBME was involved in at least 4,500 suspicious wire transfers through U.S. correspondent accounts that totaled at least $875 million between November 2006 and March 2013"; (3) and that "[f]rom July 2007 to February 2013, at least 71

entities used FBME's Cyprus address to conduct transactions through the U.S. financial system," an unusual practice aimed at obscuring the customer's address and suggesting illicit activities. Id. at 42640.

In the same discussion, FinCEN did cite one piece of information that would have been particularly affected by the Cypriot financial crisis: "In just the year from April 2013 through April 2014," the agency noted, "FBME conducted at least $387 million in wire transfers through the U.S. financial system that exhibited indicators of high-risk money laundering typologies." Id. FBME makes much of this statement, emphasizing that it was "the only such one-year band spotlighted by FinCEN, and any reader would understand it to be especially telling." Defs.' Cross-SMJ 11. The Bank also notes that the $387 million amount is "almost half" of the total volume of suspicious wire transfers detected during the 2006–2013 period, "which indicates how impactful the Cypriot crisis was." Id.

All in all, the Court agrees with FBME that the $387 million figure cited by FinCEN in the NOF was a significant detail—but it was a detail, nonetheless. In light of the Supplement, it is now clear that FinCEN's conclusions did not turn on the 2013–14 period of concern to FBME. Rather, FinCEN's various determinations about FBME's weak AML controls and murky transactions were based on the agency's analysis of an eight-year period that began well before the Cypriot crisis. Most of the data predates the period FBME complains is inflated. See NOF at 42640 ("FBME was involved in at least 4,500 suspicious wire transfers through U.S. correspondent accounts that totaled at least $875 million between November 2006 and March 2013"). Perhaps more to the point, total SARs numbers, as FinCEN has since made clear, were not even central to its analysis. Rather, the agency focused on the *nature* of the SARs—the shell company transactions, the lack of transparency, and other signals of money laundering. See

Supplement at 86577 (explaining that SARs were used as "qualitative evidence" of FBME's activity). More important still was affirmative evidence that FBME had facilitated transnational, criminal transactions. Id. (explaining that "the agency's analysis of SARs simply affirmed FinCEN's concern surrounding FBME's involvement in money laundering"). FBME has made no argument that the Cypriot financial crisis tainted any of *that* information.

In short, the agency has adequately explained that, even assuming inflated SARs figures at the end of the 2006–14 period, its conclusion would not have changed—and therefore, was "based on a consideration of the relevant factors." Thompson, 741 F.2d at 409.

*4. No SARs Benchmark or Point of Comparison*

FinCEN responded to FBME's concern about the lack of a SARs benchmark or point of comparison in two main ways. First, it reiterated some of its points regarding the agency's focus on absolute SARs data, and on the potential that SARs rates actually underestimate FBME's illicit activity because of the Bank's weak AML controls. Supplement at 86578–79. Second, FinCEN noted its concern that "setting a benchmark as FBME suggests could simply set a target for banks or customers wishing to evade money laundering controls." Id. at 86579.

FBME critiques these responses, first, by recycling prior arguments about the importance of comparative data. See Pls.' Cross-MSJ 3–4 (arguing that "a number can be large or substantial only in relation to another number" and citing FBME's briefing in support of its first cross-motion for summary judgment). These assertions that FinCEN *must* compare FBME's SARs data to other banks, or to a benchmark, turn on policy judgments that neither FBME nor this Court is authorized to render. See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) ("[A] court is not to substitute its judgment for that of the agency."). That is why the Court did not *require* FinCEN to draw comparisons or identify

typical SARs rates on remand. Instead, the Court faulted the agency for neither providing comparative benchmarks, *nor* "attempt[ing] to explain why such benchmarks may be unnecessary, or infeasible to provide, or how else the agency may have applied its expertise and regulatory experience in the absence of specific benchmarks." FBME III, 2016 WL 5108018, at *21. FinCEN's response does the latter: It explains why benchmarks are both "unnecessary" and "infeasible to provide."

FBME again encroaches on the province of the agency by doubting FinCEN's judgment that a benchmark could operate as "a target for banks or customers wishing to evade money laundering controls." Supplement at 86579. In FBME's view, that "reasoning is perverse," since "announcing a baseline [would have] the effect of reducing suspicious transactions below that level." Pls.' Cross-MSJ 7. But FinCEN's point is that it could have the opposite effect as well; it is plausible that banks would relax their AML controls with the knowledge that they were well under a benchmark SARs rate (thereby increasing their SARs rate). In any event, the merits of FBME's own views regarding the relative costs and benefits of publishing a benchmark are not of concern here. By explaining why in its judgment a public SARs benchmark is not necessary or desirable, FinCEN has discharged its duty to communicate "what major issues of policy were ventilated . . . and why the agency reacted to them as it did." Pub. Citizen, 988 F.2d at 197.[8]

For the above reasons, in light of the Supplement, the Court finds that FinCEN has now adequately responded to FBME's significant comments in promulgating the Second Final Rule.

[8] FBME's third line of argument on the benchmark issue is premised on the notion that FinCEN "virtually concede[d] that FBME's SARs rate is comparatively low." Pls.' Cross-MSJ 6. The agency made no such concession. Instead, it merely pointed out that FBME's weak AML controls undermined the validity of any attempts to engage in an apples-to-apples comparison of SARs data. See Supplement at 86578–79.

B. FBME's Motion for Reconsideration

As discussed above, FBME has separately moved the Court to reconsider three aspects of its previous summary judgment Opinion: (1) its determination that FinCEN had adequately disclosed unclassified, unprotected material, see FBME III, 2016 WL 5108018, at *18; (2) its denial of FBME's request for a privilege log, see id., at *8; and (3) its decision *not* to order the deposition of Richard May, the FinCEN official who certified the administrative record, see id., at *15 n.5. See Pls.' Mot. Reconsider 20–24. All three conclusions were, at bottom, determinations that FinCEN had satisfactorily compiled the administrative record.

"[A]bsent clear evidence to the contrary, an agency is entitled to a strong presumption of regularity, [i.e.,] that it properly designated the administrative record." Comm. of 100 on the Fed. City v. Foxx, 140 F. Supp. 3d 54, 59 (D.D.C. 2015) (quoting Pac. Shores Subdivision v. U.S. Army Corps of Eng'rs, 448 F. Supp. 2d 1, 5 (D.D.C. 2006)) (second alteration in original). That presumption sets a high bar for an APA plaintiff seeking to go beyond the administrative record—as FBME sought to do before and does here again. In particular, in an APA case, whether seeking to supplement the record, obtain a privilege log, or engage in extra-record discovery, a plaintiff must generally make "a strong showing of bad faith or improper behavior" on the part of the agency. Theodore Roosevelt Conservation P'ship v. Salazar, 616 F.3d 497, 514 (D.C. Cir. 2010); see also Air Transp. Ass'n of Am., Inc. v. Nat'l Mediation Bd., 663 F.3d 476, 487 (D.C. Cir. 2011) (extra-record discovery appropriate only where "a party makes a significant showing . . . that it will find material in the agency's possession indicative of bad faith or an incomplete record"); Stand Up for California! v. United States Dep't of Interior, 71 F. Supp. 3d 109, 123 (D.D.C. 2014) ("[T]o obtain a log of privileged and deliberative materials

excluded from the administrative record, plaintiffs must overcome, with clear evidence, the presumption of regularity in the agency proceedings by showing bad faith or other exceptional circumstances.").

FBME's motion to reconsider cites no evidence demonstrating either "bad faith" or "improper behavior" on the part of the agency. As FBME notes in its briefing, see Pls.' Mot. Reconsider 2, 10–11, 17, the agency has repeatedly assured the Court that the administrative record includes all materials considered in promulgating the Second Final Rule, and that the documents in the *ex parte* portion of the record are either classified or protected by the Bank Secrecy Act. Most recently, in response to FBME's motion, FinCEN has submitted yet another declaration from Richard May, who reaffirms that the record certified in April 2016 included "everything [the agency] considered for purposes of [the] rulemaking." Defs.' Opp'n, Declaration of Richard May ("May Decl.") ¶ 2. May further attests that all classified documents in the record were reviewed for possible declassification, and that documents ultimately "deemed classified were included in the classified and statutorily protected portions of the record lodged with the court." Id. at ¶ 3.[9]

Neither the so-called February Report nor the series of emails between FinCEN and the CBC regarding the potential public release of that document contradicts those statements—let alone suggests that they are were the product of bad faith. Rather, as FinCEN notes in its briefing, the facts that FinCEN possessed the February Report in 2015 and later sought permission to publicly disclose it are "consistent with conclusions that either: (1) FinCEN never

[9] Although FinCEN may not comment publicly on the substantive content of the *ex parte* administrative record, May has submitted "an *ex parte* declaration to describe whether or not any of the information referenced in the Georgiou Declaration appears in the classified portions of the administrative record." May Decl. at ¶ 4. The Court has reviewed that declaration.

ultimately considered it as part of the rulemaking or submitted it to the decisionmaker; or (2) FinCEN did consider it but treated the communication as classified, considering the request of a foreign government." Defs.' Opp'n 8.

While the Court agrees with FBME that the first possibility is unlikely, see Pls.' Reply Supp. Mot. Reconsider 4–5, the second is not. Executive Order 13,526 governs the classification of national security information, and provides that an original classifying authority may classify "foreign government information" (§ 1.4(b)) when "the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security" (§ 1.1(a)). 75 Fed. Reg. 707 (Dec. 9, 2009). "Foreign government information" includes "information provided to the United States Government by a foreign government . . . or any element thereof, with the expectation that the information, the source of the information, or both, are to be held in confidence" (§ 6.1(s)). See also Unrow Human Rights Impact Litig. Clinic v. U.S. Dep't of State, 134 F. Supp. 3d 263, 273 (D.D.C. 2015) (classification of "foreign government information" valid under Executive Order 13,526). In other words, assuming the truth of FBME's allegations, the February Report—provided by an "element" of a foreign government "with the expectation" of confidentiality—would satisfy the criteria for classifiable "foreign government information." FBME argues that the February Report does not implicate national security, but the Bank fails to acknowledge that, under Executive Order 13,526, the "unauthorized disclosure of foreign government information" is "*presumed* to cause damage to the national security" (§ 1.1(d)) (emphasis added). In any event, FBME's views regarding potential national security implications (and its other policy concerns regarding the classification of foreign-government correspondence, see Pls.' Reply Supp. Mot. Reconsider 8), are entitled to no weight. FinCEN's evaluations of national security risk, by contrast, fall within a "uniquely

executive purview" and receive considerable deference. Larson v. Dep't of State, 565 F.3d 857, 865 (D.C. Cir. 2009) (quoting Ctr. for Nat. Sec. Studies v. DOJ, 331 F.3d 918, 926 (D.C. Cir. 2003)).

FBME also attempts to infer bad faith on FinCEN's part in a September 17, 2015 statement, sent via email from the agency's litigation counsel to FBME, that "to the best of our knowledge FinCEN does not have" the "Pricewaterhouse Cooper audits you asked us about." A.R. 3922. FBME argues that the February Report is clearly a "Pricewaterhouse Cooper audit[]," and that—since FinCEN was in possession of the February Report in September 2015—the statement was a deliberate attempt at concealment and obfuscation. See Pls.' Mot. Reconsider 15–16. In his declaration, Mr. May notes that he recalls the exchange, and explains that he "understood FBME counsel's inquiry regarding 'the Pricewaterhouse Cooper audits' to refer to reports authored by PwC and not the [CBC]." May Decl. ¶ 5. The Court finds that explanation quite plausible, particularly since, as FinCEN notes, the February Report "is plainly a CBC audit, not a PwC audit," mentioning PwC "exactly twice as having participated in the onsite examination." Defs.' Opp'n 12. Under the circumstances, the incident was most likely a simple misunderstanding between counsel.

In short, because none of the evidence FBME has adduced now or previously suggests either "bad faith or improper behavior" on FinCEN's part, Theodore Roosevelt Conservation, 616 F.3d at 514, the Court again sees no reason to grant FBME extra-record discovery or otherwise look beyond the administrative record that FinCEN has certified. FBME has therefore

failed to show "that reconsideration is appropriate," much less "that harm or injustice would result if reconsideration were denied." Second Chance Body Armor, 893 F. Supp. 2d at 268.[10]

## IV. Conclusion

For the foregoing reasons, the Court will grant FinCEN's renewed motion for summary judgment and deny FBME's motion for reconsideration. Furthermore, the Court will lift the stay currently blocking the Second Final Rule's implementation. Four factors apply when resolving a motion to stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela, 185 F. Supp. 3d 233, 249–50 (D.D.C. 2016). In light of the Court's merits analysis, FinCEN's interest in having the Rule take effect, and the public's interest in protecting the U.S. financial system from illicit activity such as money laundering, only the second factor could possibly weigh in favor of FBME at this stage. And the Bank has not demonstrated how implementation of the Rule would cause it irreparable harm under present circumstances. Accordingly, lifting the stay pending appeal is proper.

[10] In its opposition, FinCEN invokes "the rule of harmless error," arguing that FBME's motion should fail because it has "not even attempted to show that the [February Report] would change the outcome of summary judgment or the rulemaking." Defs.' Opp'n 14. FBME's motion, however, was limited to seeking reconsideration of the Court's Opinion in three discrete respects. See Pls.' Mot. Reconsider 20–24. The motion is, in essence, one to supplement the record or engage in extra-record discovery, and the Court sees no reason to apply harmless error analysis in that context. Accordingly, the Court need not address whether the February Report, standing alone, has an effect on the Court's broader merits determinations—a subject the parties discussed at the tail end of their respective briefing. See Defs.' Opp'n 14–15; Pls.' Reply Supp. Mot. Reconsider 15–21.

An appropriate Order accompanies this Memorandum Opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date: April 14, 2017